HINKSON, Appellant, vs. SAUTHOFF and others, Respondents.

*January 9—February 7, 1956.*

34

For the appellant there was a brief by *David S. Novick,* attorney, and *Norman N. Rosen* of counsel, and oral argument by *Mr. Novick* and *Mr. Harry N. Loeb,* all of Madison.

For the respondents there was a brief by *Spohn, Ross, Stevens, Lamb & Pick* of Madison, and oral argument by *Frank A. Ross.*

CURRIE, J.    The instant action for fraud was commenced February 23, 1954, or nearly twenty-one years after the alleged fraudulent sale of the 408 shares of capital stock in the corporation had been made by the executor of the Park E. Hinkson estate to the widow of the deceased.  The allegations of fraud set forth in the amended complaint center upon the event of such private sale.  The sole issue on this appeal is whether plaintiff's action is barred by sec. 330.19 (7), Stats.

Such statute imposes a six-year statute of limitations upon an action for fraud but contains the following proviso:

"The cause of action in such case is not deemed to have accrued until the discovery, by the aggrieved party, of the facts constituting the fraud."

As pointed out in *Thom v. Sensenbrenner* (1933), 211 Wis. 208, 210, 247 N. W. 870, the amendment made to such

statute by ch. 24, Laws of 1929, had the effect of making the above-quoted proviso applicable to actions at law as well as suits in equity, while prior thereto it had been limited to the latter. However, the sentence of the statute quoted above was not changed by such 1929 amendment, so prior decisions of this court interpreting such sentence have lost none of their force as precedents. Particularly pertinent is the following interpretation of such statutory provision in *O'Dell v. Burnham* (1884), 61 Wis. 562, 569, 21 N. W. 635:

"When the information brought home to the aggrieved party is such as to indicate where the facts constituting the fraud can be effectually discovered *upon diligent inquiry,* it is the duty of such party to make the inquiry, and if he fails to do so within a reasonable time he is, nevertheless, chargeable with notice of all facts to which such inquiry might have led." (Emphasis supplied.)

In *Ludington v. Patton* (1901), 111 Wis. 208, 242, 86 N. W. 571, the court declared:

"It must be conceded that the statute of limitations [then sec. 4222, Stats., now sec. 330.19 (7)] commenced to run against appellant from the time she obtained knowledge of the fraud or might have obtained such knowledge *by the exercise of reasonable diligence.*" (Emphasis supplied.)

A more recent decision holding to the same effect is *Gottschalk v. Ziegler* (1932), 208 Wis. 55, 62, 241 N. W. 713.

We deem it to be well settled by these decisions that under the provisions of sec. 330.19 (7), Stats., a cause of action for fraud is barred if the aggrieved person was placed in possession of facts which, if followed by diligent inquiry, would have disclosed the fraud. It is the contention of counsel for the defendants that the proper application of this principle to the facts of the instant action requires affirmance of the judgment of dismissal.

Because the determination by the trial court, that plaintiff's cause of action is barred by the statute of limitations, was made by summary judgment, we are necessarily confined in our review of the facts to those admitted in the pleadings or appearing in the affidavits filed which were not controverted by the affidavits submitted by the opposing party, or parties. What are the facts known to plaintiff which, if followed by diligent inquiry on his part, would have disclosed the alleged fraud?

Foremost among such facts is plaintiff's knowledge that any rights he may have had in the 408 shares of stock in the corporation are necessarily grounded upon the provisions of his father's last will and testament. While the plaintiff did not expressly deny in his affidavits that he had knowledge of the provisions of such will, he did make the general allegation that he never examined the probate proceedings in his father's estate. Due diligence on his part required that he read such will and know the contents thereof. The will bequeathed the property in equal shares to the plaintiff and his sister subject to a life estate in his mother. It was further expressly provided in the will that, if the testator's widow should remarry, her life estate would terminate and in lieu thereof she would receive one third of the testator's property outright, and the plaintiff and his sister would each receive one third thereof.

Plaintiff also knew that his mother married a man by the name of Gillette within a few years after his father's death and prior to the annual stockholders' meeting of the corporation held March 1, 1935, and, in spite of such fact, that no stock certificate was ever issued to him for the one third of said 408 shares of stock.

At the time of his father's death the plaintiff was a director of the corporation and on June 18, 1932, plaintiff was elected president and employed as manager of the corporation. He continued to be such director, president, and manager until

February 6, 1939, when he resigned. He acted as chairman of the annual meetings of stockholders of the corporation held in March of the years 1935, 1936, and 1937, and subscribed his approval to the minutes of each of such meetings. The total issued capital stock of the corporation was 600 shares and the minutes of the annual stockholders' meeting of 1935 contained the following statement:

"An examination of the stock book and roll call showed the following stockholders present: Edna K. Hinkson Gillette-447 shares."

Similar recitals appeared in the minutes of the 1936 and 1937 stockholders' meetings.

While the plaintiff denied that he had any knowledge of the sale by the executor to his mother of the 408 shares of stock pursuant to the order of the county court authorizing such private sale, the facts that all of said shares continued to be registered in the stock book of the corporation in the mother's name, and that she was named as the owner thereof in the minutes of the annual stockholders' meetings held subsequent to her remarriage, were known to him. Due diligence on his part required that he inquire why he had not received the one third of said shares to which he became entitled upon his mother's remarriage. Proper inquiry would have disclosed the fact of the executor's sale of such stock to his mother. Plaintiff does not contend that, if he had learned of such sale at any time prior to the severing of his connections with the corporation in 1939, he would not then have possessed facts sufficient to apprise him of the alleged fraud. Obviously, if anyone knew the true value of such stock at the time of the executor's sale, it would have been the plaintiff because of his intimate knowledge of the affairs of the corporation as director, president, and manager of the corporation. Parenthetically we might observe that we entertain very serious doubts that this stock had any such value as now claimed by the plaintiff it possessed at the time of the father's death in

1932 and the executor's sale in 1933, in view of the fact that the entire nation was then plunged in the depth of a great depression when expenditures for advertising were being held to a minimum.

Plaintiff attempts to escape the legal consequences resulting from his knowledge, that his mother after her remarriage continued as record owner of all of the 408 shares of stock, by alleging by affidavit that she then stated to him "that she was electing not to take a transfer to her of a one-third interest because she preferred her life estate and the security afforded thereby, stating and representing to this plaintiff that she preferred to be certain that all the property would be divided equally and pass to her two children upon her death." His affidavit further alleged that his mother constantly reminded him that she was voting such stock at the afore-mentioned stockholders' meetings as life tenant. The acceptance at face value by plaintiff, who was a competent businessman, of such representations and explanation, without making any inquiry or taking any action to protect his own interest, is hardly conduct which meets the test of due diligence.

We, therefore, conclude that plaintiff's cause of action is barred by sec. 330.19 (7), Stats., and that the learned trial court properly granted defendants' motion for summary judgment.

The facts of this case demonstrate the wisdom of the policy underlying the prior-cited decisions of this court in holding that, if the aggrieved person has knowledge of facts which would have disclosed the existence of the alleged fraud if he had made diligent inquiry, his cause of action is barred by such statute after the lapse of six years from the time he acquired knowledge of such facts. The intervening death of all three appraisers in the father's estate, together with the death of the widow, would necessarily greatly handicap the defendants in defending on the merits. Probate proceedings

should have some finality, and administrators, executors, and trustees whose acts have been authorized or approved by orders of the court should not ordinarily be subjected to suits instituted many years afterward based on allegations of fraud coupled with further allegations of professed ignorance by the aggrieved person of the matters which appear of record in such proceedings.

*By the Court.*—Judgment affirmed.