MILWAUKEE WESTERN BANK, Appellant, v. LIENEMANN, Respondent.

*October 31—November 28, 1961.*

62

For the appellant there were briefs by *Whyte, Hirschboeck, Minahan, Harding & Harland,* attorneys, and *Victor M. Harding* of counsel, all of Milwaukee, and oral argument by *Victor M. Harding.*

For the respondent there was a brief by *Affeldt & Lichtsinn,* and oral argument by *Eldred Dede,* all of Milwaukee.

MARTIN, C. J. From 1940 to 1956 defendant was a part-time director and officer of the plaintiff bank and a member of its executive committee in charge of loan applications. Defendant also operated a finance business through

Merchants Acceptance Corporation, of which he was the sole stockholder.

Early in 1950 Lienemann learned of the financial condition of Mercury Engineering Corporation, which was engaged in manufacturing and selling machinery used in the paper and printing industry. Mercury was in need of working capital and was desirous of acquiring a financial adviser. Lienemann was willing to perform such services but wished to be compensated with stock in the company rather than cash.

In late March or early April of 1950, Lienemann met with J. R. Baumgartner, the president, general manager, and sole stockholder of Mercury. It was agreed between them that Lienemann would receive 10 per cent of the capital stock of Mercury, or 100 shares, in consideration of which Lienemann would arrange a $100,000 line of credit for Mercury with a local bank, would invest $25,000 from his own funds, and would become a director and financial adviser of the company.

On April 25, 1950, Mercury made application to the plaintiff for a $100,000 line of credit and on the same date the executive committee approved the loan. The action of the executive committee was approved by the board of directors on May 2, 1950. Lienemann was present and participated in both meetings. On the same date the executive committee approved Mercury's line of credit, Lienemann received from Baumgartner a certificate for 100 shares of Mercury stock. In order to make Lienemann's $25,000 personal loan to Mercury, Merchants Acceptance borrowed $18,000 from the plaintiff. Subsequently, Lienemann was made a director and treasurer of Mercury and rendered various financial services to the company.

Plaintiff alleges in its complaint that Lienemann's receipt of the Mercury stock under these circumstances constituted

a fraud upon the bank, and for the purposes of this opinion we may assume this is true.

The question to be determined is whether the trial court correctly held that plaintiff's cause of action is barred by the statute of limitations. Sec. 330.19 (7), Stats., provides for a limitation of six years in—

"An action for relief on the ground of fraud. The cause of action in such case is not deemed to have accrued until the discovery, by the aggrieved party, of the facts constituting the fraud."

Plaintiff's action was commenced on December 29, 1958. Thus, if it discovered the "facts constituting the fraud" before December 29, 1952, its cause of action is barred.

It was held in *O'Dell v. Burnham* (1884), 61 Wis. 562, 569, 21 N. W. 635, construing the predecessor of sec. 330.19 (7), Stats.:

"When the information brought home to the aggrieved party is such as to indicate where the facts constituting the fraud can be effectually discovered upon diligent inquiry, it is the duty of such party to make the inquiry, and if he fails to do so within a reasonable time he is, nevertheless, chargeable with notice of all facts to which such inquiry might have led." See also *Ludington v. Patton* (1901), 111 Wis. 208, 86 N. W. 571, and *Hinkson v. Sauthoff* (1956), 272 Wis. 33, 74 N. W. (2d) 620.

The trial court found:

"That the plaintiff bank in the year 1950 not only had good reason to suspect but had actual knowledge that part of the consideration Mr. Lienemann received from Mercury Engineering Corporation was for his financial services, which included obtaining the line of credit from the plaintiff bank."

Plaintiff contends this finding is not supported by any credible evidence and that the defendant himself admitted

that, "I never told anyone connected with the Teutonia Bank that the Mercury stock I received was in consideration for the Teutonia Bank loan." Under the rule quoted above, it is not necessary that a defrauded party have knowledge of the ultimate fact of fraud. What is required is that it be in possession of such essential facts as will, if diligently investigated, disclose the fraud. The burden of diligent inquiry is upon the defrauded party as soon as he has such information as indicates where the facts constituting the fraud can be discovered. The record is replete with evidence that plaintiff's agents had that kind of information prior to December 29, 1952.

Lienemann testified that he talked with Mr. Stock, the president of the plaintiff in 1950, and took him to the Mercury plant about a month before the Mercury transaction took place; that he told Stock he was getting stock in Mercury for going into the company. He testified that two weeks before the transaction he had a conversation with Julius Mueller, executive vice-president of the bank, in which he told Mueller he was getting some stock in Mercury for his services. He testified that before April 25, 1950, he also disclosed that fact to Mr. Reichert, the loaning teller, and to Mr. Linke, who was in charge of the instalment-loan department, and to a number of other officers of the bank. None of this testimony was refuted.

Defendant testified that early in 1952 he disclosed the facts regarding his interest in Mercury to Gregory Schaefer, who became president of the plaintiff in 1953. Schaefer testified that within three months after he came to the bank in January, 1952, he learned of the Mercury loan; that the Mercury line of credit was discussed among all the officers and directors of the bank, and that he had discussions with Lienemann on matters which involved the facts of defendant's interest in Mercury as an officer-director and stockholder.

Defendant also testified that a week or two after the Mercury loan was made he took Bernard Kuehlhorn, director of the bank for over thirty years, to the Mercury plant and told him he was getting Mercury stock for his services. Kuehlhorn testified Lienemann never told him of his interest in Mercury, but upon cross-examination in connection with state banking department reports he testified he knew about it in 1953; that he could not remember whether he knew of it before that—it might have been in 1950.

There is in evidence Exhibit 48A, a Dun & Bradstreet credit report on Mercury dated July 17, 1950, which was a part of plaintiff's files. This report recites that Lienemann was elected treasurer of Mercury in June of 1950 and was acting as financial adviser of Mercury. Harold Emch, present president of the plaintiff, testified that it was common practice to obtain credit reports on a substantial borrower.

From all the evidence it is clearly apparent that before December 29, 1952, plaintiff's agents had such knowledge of Lienemann's interest in Mercury that diligent inquiry with regard thereto would have disclosed the fraud. Thus, it is chargeable with notice of all the facts which such inquiry would have disclosed, and the trial court correctly held that its cause of action is barred by sec. 330.19 (7), Stats.

*By the Court.*—Judgment affirmed.

BROWN, J., took no part.