Marian Hutter OWEN, Plaintiff–
Appellant,

v.

Herbert WANGERIN, Mary Wangerin,
Dave Thompson, et al., Defendants–
Appellees.

No. 92–1171.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 24, 1992.

Decided Jan. 29, 1993.

Rehearing and Rehearing En Banc
Denied March 5, 1993.

Aram A. Hartunian (argued), Steven P. Schneck, Hartunian & Associates, Chicago, IL, for Marian Hutter Owen.

Herbert Wangerin, pro se.

Mary Wangerin, pro se.

Irving D. Gaines (argued), Daniel J. Mages, Milwaukee, WI, for Dave Thompson, Judy Thompson, Emily Stewart Beaver, William Hayes, Mary Hayes, Richard Byrne, Mimi Byrne, Roberta Robinson and Donald Schuenke.

Richard A. Howarth, Jr., Elkhorn, WI, for John J. Pilger.

Richard A. Howarth, Jr., pro se.

Patrick A. Dewane, Jr., Dewane, Dewane & Kummer, Manitowoc, WI, for Kenneth J. Brey, Jr.

James P. O'Neill, O'Neill, Schimmel, Quirk & Carroll, Milwaukee, WI, for Anthony L. Schlise.

James L. Adashek, Milwaukee, WI, for Marine Trust Co., N.A., as Trustee for the Estate of Emily Stewart Beaver.

Marie A. Stanton, John A. Kramer (argued), Grzeca & Stanton, Green Bay, WI, for Shores Condominium Ass'n.

Before CUDAHY and RIPPLE, Circuit Judges, and ESCHBACH, Senior Circuit Judge.

ESCHBACH, Senior Circuit Judge.

The plaintiff in this diversity suit is appealing the district court's grant of summary judgment on her claims of fraud and mistake in which she requested that two land conveyances be declared void or in the alternative be reformed. She also appeals the district court's disqualification of her lawyer and the dismissal of her breach of contract claim. These claims arose from two land transactions in which John A. Hutter, Jr. (Hutter) sold land in his capacity as trustee for the Hutter Northern Trust (the Trust).[1] We exercise jurisdiction to hear this appeal pursuant to 28 U.S.C. § 1291.

## I.

Hutter, who had been a practicing attorney since 1924, entered into negotiations to sell a parcel of land owned by the Trust with Defendants Douglas Haag and Anthony Schlise, who were partners in a venture that wanted to develop a condominium complex. Hutter met with Haag in 1976 to discuss the sale. During this meeting, Hutter and Haag walked a distance of approximately 500 feet along the shore and then reached an oral agreement for the purchase of the property. The sale was conditional on obtaining a use permit from the Door County Planning Department to construct multi-family condominium units on the property. During the zoning proceedings, the property was described as "500 feet along the shore." In October 1977, a deed was prepared that described the property as the "Northerly 500 feet" [of Government Lot 2, etc.] instead of "500 feet along the shore". Hutter, who chose to represent himself, signed this deed. Because the shoreline ran on a diagonal, the description in the deed comprised substantially more land than the 500 feet along the shore; it conveyed more than 600 feet along the shore.

The property directly south of the parcel agreed upon by Hutter and Haag contained several buildings that were part of a resort known as Chateau Hutter. This property and the buildings were owned by the trust. The south line of the parcel described in the 1977 deed ran through a building in Chateau Hutter that was used as a dining hall.

The second conveyance of land took place in 1984. Defendants Herbert and Mary Wangerin are individual owners of a condominium that rests on part of the property conveyed in 1977. They met with Hutter and told him they desired to purchase a

---

1. Hutter was the original plaintiff in this action. He died during the pendency of the case, and his daughter, Marian Hutter–Owen (Owen), who was the successor trustee, was substituted as Plaintiff.

small parcel of land. The Wangerins and Hutter signed a handwritten agreement that contained a sketch depicting a small triangle of land, 152 feet × 130 feet × 80 feet.

In 1984, Hutter received in the mail a deed conveying a 1.24 acre parcel of property to the Chateau Villas Joint Venture which then consisted of Schlise, John Kobussen, Ted Haag and Sandra Radtke. Hutter executed this deed and returned it. Hutter did not read the deed or attempt to have it read to him before he signed it. Apparently, Hutter thought the deed conveyed only the small triangle of property he discussed with the Wangerins. He also thought that the grantee named on the deed was the Wangerins.

In 1984, defendants Schlise and Haag agreed with co-owners of the Hutter real estate, Jeffrey Check and Robert Hippert, that the dining hall on Chateau Hutter should be destroyed. After this building was destroyed, Hutter became aware that he had actually sold part of the land that included the hall and brought this suit to recover the same.

The amended complaint in this diversity suit contained seven counts. Owen is appealing only Counts I, IV and VII. Count I alleges fraud and seeks rescission and damages. Count IV asserts mutual mistake and seeks reformation. Count VII asserts a claim for breach of contract and seeks damages and an accounting.

During the proceedings, the court held a hearing on the defendants' motion to disqualify Albert H. Beaver (Beaver) from representing plaintiff. The court granted the motion on the ground that Beaver owed defendant Schlise approximately $80,000. The district court concluded that although Owen had consented to Mr. Beaver's representation despite this conflict, Beaver had not made an "independent reasonable judgment that the representation will not be adversely affected on account of competing personal interests with one or more of the defendants in this case." Following this order, Owen filed a motion for reconsideration, repeating that she voluntarily consented to representation by Beaver. This mo-

tion was denied. Owen then filed a supplemental motion for reconsideration, pointing out that Schlise had executed a general release. After an evidentiary hearing, the district court denied this motion on the basis that the release was invalid. Owen then filed a second supplemental motion for reconsideration informing the court that Beaver's condominium unit had been sold and the buyer had executed an indemnity against the claim of Schlise. As additional evidence in support of her second supplemental motion for reconsideration, Owen presented a judgment where Judge S. Dean Pies for the Circuit Court of Door County had rendered findings on Schlise's petition to have the general release declared invalid. Judge Pies had found that the general release was valid and released Beaver from liability to Schlise on claims made in his court. The district court denied the second supplemental motion after an evidentiary hearing on the grounds that the judgment by Judge Pies was not res judicata in plaintiff's case.

After extensive discovery, the district court granted the defendants' motion for summary judgment on all counts except Count VII. In his October 30, 1991 Order, Judge Stadtmueller indicated to Owen that she should notify the court if she wished to proceed on Count VII by November 20, 1991.

On November 12, 1991 Owen filed a Motion for Relief From Decision, in which, among other things, she requested that the Court "enter a scheduling order for the completion of discovery". On December 19, the district court dismissed Count VII for lack of prosecution pursuant to its October 30th order. Owen now appeals the grant of summary judgment, the dismissal, and the disqualification of her attorney. For the reasons that follow, we affirm in part and reverse in part.

## II.

A) The Fraud Claims

■ The district court concluded that the claim of fraud on the 1977 deed was barred by the statute of limitations. For suits

alleging common law fraud, the Wisconsin statute of limitations allows six years from the moment the cause of action accrues. A cause of action is deemed to accrue when the aggrieved party discovers the fraud. Wis.Stat. § 893.93(1)(b). Courts have embellished the statute with the rule that a party is deemed to have discovered the fraud when he finds out enough to cause a reasonable man to make sufficient inquiries to discover the fraud. *O'Dell v. Burnham*, 61 Wis. 562, 21 N.W. 635, 639 (1884); *Milwaukee Western Bank v. Lienemann*, 15 Wis.2d 61, 65, 112 N.W.2d 190, 192 (1961).

The district court concluded that because Hutter had actual notice of the legal description in the deed, he had sufficient information so that diligent inquiry would have led him to discover the fraud at that time. The district court concluded that the statute of limitations on fraud began to run when Hutter signed the deed; therefore, it granted summary judgment on the fraud claim. In reviewing a grant of summary judgment, we review the entire record and inferences drawn from it in a light most favorable to the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 993, 8 L.Ed.2d 176 (1962).

Owen argues that the statute of limitations can never commence running at the time of the fraud. She points out that for an action in fraud to accrue in the first place, the victim must be diligent to the extent that his reliance is reasonable. *Kiefer v. Fred Howe Motors, Inc.*, 39 Wis.2d 20, 29, 158 N.W.2d 288, 292–93 (1968). *Jacobsen v. Whitely*, 138 Wis. 434, 437, 120 N.W. 285, 286 (1909); *Bank of Sun Prairie v. Esser*, 151 Wis.2d 11, 442 N.W.2d 560 (Ct.App.1989); *Marine Bank, Nat'l Ass'n v. Meat Counter, Inc.*, 826 F.2d 1577 (7th Cir.1987). Then Owen notes that the same test determines when the period of limitations starts running: the moment when the facts known by a reasonable man would have prompted him to discover the fraud. *O'Dell v. Burnham*, 61 Wis. 562, 21 N.W. 635, 639 (1884); *Koehler v. Haechler*, 27 Wis.2d 275, 133 N.W.2d 730, 732 (1965); *Milwaukee Western Bank v. Lienemann*, 15 Wis.2d 61, 65, 112

N.W.2d 190, 192 (1961). Owen concludes that a fraud victim could not be negligent enough in her reliance to start the statute of limitations running and still state a claim for fraud. She reaches this conclusion because if a victim is sufficiently negligent to start the statute running, she could not also be reasonable enough for the action to accrue in the first place. *Schoedel v. State Bank of Newburg*, 245 Wis. 74, 13 N.W.2d 534 (1944).

While it does appear that the district court's discussion of the statute of limitations issue may have been directed more toward the reasonableness of Hutter's reliance, we need not decide whether Owen's argument is correct. We note that as early as 1979, Hutter was aware that the Shores Condominium was claiming 600 plus feet of shoreline. This information was included in their brochures, video and real estate listing advertising. (R. 114, Ex. 8, 9, 10). Hutter even sent a letter to Haag asking:

> Will the sign to be erected on the 500 ft. (not 600 as in ad) bear the name Chateau Hutter Villas?

(R. 114–208). This letter evidences that Hutter had knowledge of facts that upon diligent inquiry would have led him to discover the fraud by at least 1979. Hutter did not file his suit until 1987, well past the running of the statute of limitations.

It need not concern us that the district court did not discuss this letter in its decision on the statute of limitations. Summary judgment will be affirmed on any grounds supported in the record even if not relied upon by the lower court. *Parts & Elec. Motors, Inc. v. Sterling Elec. Inc.*, 826 F.2d 712, 719 (7th Cir.1987). We conclude that even though the district court did not discuss this letter, it is evident that Hutter had notice by at least 1979 that the condominium association was claiming more than 500 feet of shoreline. There is no genuine issue of material fact in this regard. We therefore affirm the district court's grant of summary judgment on the claim of fraud for the 1977 deed.

In granting summary judgment on the fraud claim with regard to the 1984

deed, the district court found that as a matter of law, Hutter's reliance on the representations was unreasonable. The district court's decision was based upon its conclusion that because Hutter did not read the deed, he could not have reasonably relied upon the misrepresentations.

Negligent reliance is not justifiable and will not support a claim of fraud. *Williams v. Rank & Son Buick, Inc.,* 44 Wis.2d 239, 246–47, 170 N.W.2d 807, 811 (1969); *Jacobsen v. Whitely,* 138 Wis. 434, 437, 120 N.W. 285, 286 (1909). Had Hutter read the deed or had it read to him, he would have discovered that the grantee was not the Wangerins, but was the condominium association. He would have discovered that the land conveyed was not the small triangle he discussed with the Wangerins, but was actually 1.24 acres. (The deed stated on its face that it conveyed 1.24 acres. R. 1, Ex. 4.)

*Ritchie v. Clappier,* 109 Wis.2d 399, 326 N.W.2d 131 (Ct.App.1982) held that if a plaintiff does not read a document, any reliance on the representations is presumptively unreasonable. While Hutter is correct to point out that later decisions have put a gloss on *Ritchie* so that it no longer automatically bars a person who fails to read a document from an action in fraud, those cases only excuse a plaintiff from the requirements of *Ritchie* if other factors are present. Specifically, Wisconsin courts consider the relationship of the parties and the degree of trust between them, *Bank of Sun Prairie v. Esser,* 151 Wis.2d 11, 442 N.W.2d 560, 565 (Ct.App.1989), the sophistication of the parties, *id.,* and whether there were statements made that influenced the person not to read the agreement. *Ritchie,* 326 N.W.2d at 131. Hutter was a sophisticated lawyer. He was not dealing with friends or relatives, and therefore had no long-term relationship that would justify blind trust in those who presented the deed to him for his signature. Furthermore, no one encouraged Hutter to refrain from reading the deed. Although it is true that questions of reliance are usually factual determinations left for a jury, *Trevino v. Union P.R. Co.,* 916 F.2d 1230, 1235 (7th Cir.1990); *Gracyalny v. Westinghouse Elec. Corp.,* 723 F.2d 1311, 1316 (7th Cir. 1983); *State Bank of La Crosse v. Elsen,* 128 Wis.2d 508, 383 N.W.2d 916, 918 (Ct. App.1986), these questions may also be determined as a matter of law when the facts surrounding them are undisputed. *Williams v. Rank & Son Buick, Inc.,* 44 Wis.2d 239, 170 N.W.2d 807, 811 (1969). We conclude that as a matter of law Hutter was not justified in relying on the alleged misrepresentation. The grant of summary judgment on the fraud issue was therefore appropriate.

B) Reformation of the 1977 Deed

Hutter's second claim is that the legal description in the 1977 deed was the product of mutual mistake and that the district court erred in granting summary judgment on the claim for reformation of the 1977 deed. We agree.

 Reformation exists to remedy the mistaken expression of a legal description in a document, so as to make it conform with the parties' intentions. *See, e.g., De Simone v. Kramer,* 77 Wis.2d 188, 252 N.W.2d 653, 656 (1977). The remedy is available where the error to be reformed resulted from either the mutual mistake of both sides or the mistake of one side and fraud by the other. *State Bank of La Crosse v. Elsen,* 128 Wis.2d 508, 383 N.W.2d 916, 918 (Ct.App.1986). The district court granted defendants' motion for summary judgment on reformation because it determined that the parties had not reached an agreement on the amount of property to be conveyed before signing the deed. *See, e.g., Frantl Industries, Inc. v. Maier Construction, Inc.,* 68 Wis.2d 590, 592–93, 229 N.W.2d 610, 611 (1975).

 However, the record indicates that an agreement may have been made and that the description in the deed could have been the product of mistake. First, we note that in all of the documents and descriptions presented to the zoning commission, the property was described as 500 feet along the shore. Furthermore, Haag, stated in his deposition that he and Hutter reached an agreement concerning the amount of land when they walked it off.

Haag also was under the impression that none of the buildings on Chateau Hutter were to be conveyed. He noted that it was not until much later that he realized the deed conveyed more land than that agreed upon and also conveyed a portion of the dining hall. (R. 179, Ex. 16, pp. 40–41, 44, 46, 47–48, 54, 116–117, 130, 131, 133–34). Furthermore, Schlise, in his deposition, admitted that he also thought he was purchasing 500 feet of shore footage, and admitted that it was not until years later that he found out the deed conveyed more than this. (R. 180, Ex. 24, p. 185). These statements in the record lead us to conclude that there are genuine issues of material fact and that summary judgment was inappropriate on this issue. Therefore, we remand the issue of reformation to the district court for resolution of these factual questions.[2]

## C) Disqualification of Attorney

■ The district court disqualified Beaver even though Owen had freely given her consent to continued representation because it found that Beaver had not made an independent reasonable judgment that the representation would not adversely affect the competing personal interests. Owen argues on appeal that there is no longer a conflict because a local court had determined that Schlise had released Beaver from all obligations.

We will reverse a decision to disqualify an attorney only upon abuse of discretion. *United States v. Defazio*, 899 F.2d 626, 628 (7th Cir.1990). However, we also recognize that Owen is entitled to a degree of deference in the prerogative to proceed with counsel of her choice, and that disqualification is "a 'drastic measure which courts should hesitate to impose except when absolutely necessary.'" *Schiessle v. Stephens*, 717 F.2d 417, 419–20 (7th Cir.1983) (quoting *Freeman v. Chicago Musical Instrument Co.*, 689 F.2d 715 (7th Cir.1982)). After reviewing the entire record, we conclude that there was ample evidence for the district court to conclude that a conflict

still existed. The district court believed that the general release operated to release Beaver only from claims being made in Judge Pies' court and was not a general release of all liability. Judge Pies' opinion supports this conclusion. In that judgment, Judge Pies stated that Schlise released Beaver from all obligations "as to the matters envolved [sic] in this action." (R. 235). The district court concluded that a dispute over the extent and validity of the release still existed. (R. 233–2). We note that the district court held a hearing on this issue. After reviewing the transcript of that hearing, we conclude that Judge Stadtmueller's decision was well supported and did not amount to an abuse of discretion. We affirm the disqualification of Beaver.

## D) Dismissal of Count VII

■ Dismissal for failure to prosecute is reviewed with deference to the trial court's discretion. However, we recognize that dismissal for failure to prosecute is a harsh remedy that is reserved for extreme cases. In a case involving dismissal for failure to prosecute, we said:

A dismissal with prejudice is a harsh sanction which should usually be employed only in extreme situations, when there is a clear record of delay or contumacious conduct, or when other less drastic sanctions have proven unavailing.... "The sanction of dismissal is the most severe sanction that a court may apply, and its use must be tempered by a *careful* exercise of judicial discretion."

*Webber v. Eye Corp.*, 721 F.2d 1067, 1069 (7th Cir.1983) (quoting *Durgin v. Graham*, 372 F.2d 130, 131 (5th Cir.), *cert. denied*, 388 U.S. 919, 87 S.Ct. 2139, 18 L.Ed.2d 1365 (1967)) (citations omitted) (emphasis in original). The remedy is usually applied when the plaintiff is not ready for trial or fails to appear. *See, e.g., Lockhart v. Sullivan*, 925 F.2d 214 (7th Cir.1991); *3 Penny Theater Corporation v. Plitt Theatres, Inc.*, 812 F.2d 337 (7th Cir.1987). In this case,

---

**2.** In her brief, Owen argues that the district court mistakenly mentioned the constraint of staying within the four corners of the deed. However, this discussion in the district court's opinion was not related to the reformation claim, and it is not error. (R. 258–12 and R. 258–25).

the district court put plaintiff on notice that she was to indicate whether she wished to pursue Count VII by November 20, 1991. Although Owen did not file anything that specifically expressed her intent to pursue Count VII, she did file a *Motion for Relief from Decision and Order* on November 12, 1991. (R. 259). The primary purpose of this motion was to influence the court to change its mind regarding its decision to disqualify Beaver. However, the motion also requested the court to set a date for completion of discovery and to set a hearing date for pending summary judgment motions. We note that although Owen's attorney could have been more explicit, one could easily infer from a request for a scheduling order for discovery that Owen wished to pursue Count VII. Owen responded to the court's order within the time limit set by the court. Although her motion did not explicitly state that she wished to pursue Count VII, it was enough to put the district court on notice of her intention. Her lack of clarity does not warrant the harsh result of dismissal of her claim. Therefore, we reverse the dismissal of Count VII.

Each party is to bear its own costs on appeal.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.