John R. KNOLL, Plaintiff–
Appellant/Cross–
Appellee,

v.

AMERICAN TELEPHONE & TELE-
GRAPH COMPANY and Lucent Tech-
nologies, Inc., Defendants–Appel-
lees/Cross–Appellants.

Nos. 97–3246, 97–3345.

United States Court of Appeals,
Sixth Circuit.

Argued March 18, 1998.

Decided May 11, 1999.

Rehearing and Suggestion for Rehearing
En Banc Denied June 30, 1999.*

* Judge Moore would grant rehearing for the
reasons stated in her dissent. Judge Nelson
recused himself from participating in this rul-
ing.

Denise J. Knecht (argued and briefed), Daniel J. Nealon (briefed), Denise J. Knecht & Associates, Cleveland, OH, for Plaintiff–Appellant/Cross–Appellee.

Ronald H. Isroff (argued and briefed), Kimberly B. Schroeder (briefed), Ulmer & Berne, Cleveland, OH, James M. Staulcup, Jr. (briefed), Lucent Technologies, Inc., Lisle, IL, for Defendants–Appellees/Cross–Appellants.

Before: BOGGS, NORRIS, and MOORE, Circuit Judges.

NORRIS, J., delivered the opinion of the court, in which BOGGS, J., joined. MOORE, J. (pp. 366–68), delivered a separate dissenting opinion.

## OPINION

ALAN E. NORRIS, Circuit Judge.

Plaintiff John R. Knoll filed suit against defendants AT & T Company and Lucent Technologies, Inc., alleging that defendants discharged and failed to rehire him because of his age. He claimed defendants failed to hire and wrongfully discharged him in violation of the Age Discrimination in Employment Act, 29 U.S.C. §§ 621–634 (1994) ("ADEA"). He also sought damages pursuant to the Ohio common law of promissory estoppel. The district court entered summary judgment for defendants on plaintiff's promissory estoppel and failure to hire claims, but denied their motion with respect to the claim of wrongful discharge. On the day of trial, the district court dismissed plaintiff's case without prejudice pursuant to Federal Rule of Civil Procedure 41(b) for lack of prosecution when plaintiff's counsel refused to try the case. The court also awarded attorneys' fees and costs to defendants. Plaintiff appeals this dismissal, the court's entry of partial summary judgment for defendants, and several of the court's prior, discovery-related rulings. Defendants cross-appeal the court's denial of summary judgment on plaintiff's wrongful discharge claim. Because we affirm the district court's Rule 41(b) dismissal, we do not reach the remaining issues.

## I.

On April 29, 1996, the district court held a case management conference at which it set a status conference for August 22, the discovery deadline for October 28, and the dispositive motions deadline for December 8. During the August status conference, the court indicated that the trial would begin February 19, 1997. On September 6, the court issued an order which, in addition to formally setting the trial date for February 19, also specified the procedure for requesting a continuance. The latter portion of the order provided:

No party shall be granted a continuance of a trial or hearing without a written motion from the party or counsel stating the reason for the continuance endorsed in ·writing by all moving parties and their lead counsel of record. The Court will not consider any motion for continuance due to a conflict of trial assignment dates unless a copy of the conflicting assignment is attached thereto. The motion shall be filed within fifteen (15) days of counsel becoming aware of the conflict, and not less than thirty (30) days prior to trial.

Plaintiff served defendants with Interrogatories and Requests for Production of Documents, and defendants timely responded on May 29, 1996. Although defendants supplied or made available most of the information requested by plaintiff, defendants objected to plaintiff's request for the personnel files of several AT & T employees. Defendants requested that plaintiff stipulate to a protective order limiting access to the files to plaintiff's counsel but permitting plaintiff's counsel to question their client as to the meaning of any nebulous terms or figures. For over three months, plaintiff's counsel made no attempt to review documents made available to them by defendants or to respond to defendant's objections.

On September 4, 1996, plaintiff finally objected to defendants' proposed stipulation and demanded that. defendants produce the requested personnel files without reservation. After an exchange of letters, the parties agreed that the court would have to resolve the issue and that, in the interim, defendants would turn over the personnel files subject to the language of the proposed protective order. Defendants filed a Motion for Protective Order on October 11. Plaintiff responded with a Motion to Compel and a Motion to Extend Discovery by at least sixty days. Unaware that plaintiff had filed the Motion to Compel, on October 17 defendants notified plaintiff that they were prepared to produce (subject to the proposed protective order) all but one of the personnel files.[1] It was not until this time, more than five months after defendants' initial accession to plaintiff's discovery requests and only a few weeks before the discovery deadline, that plaintiff's counsel requested an appointment to view documents made available to them by defendants.

On November 4, defendants filed a response to plaintiff's motions, explaining that while they did not object to an extension of the discovery period, they did object to plaintiff's representations that defendants were the cause of the delay. On November 18, by marginal entry order, the district court denied plaintiff's motions to compel and to extend discovery and granted defendants' request for a protective order.

On December 10, defendants filed a Motion for Summary Judgment. In an attempt to gain further evidence to contest defendants' motion, plaintiff's counsel contacted and interviewed two current managers of AT & T.[2] Plaintiff then noticed the

---

1. At this time, defendants turned over all of the requested personnel files except that of Joyce Belcher, which defendants argued was irrelevant to the litigation. When defendants' counsel later learned that Ms. Belcher had been plaintiff's peer, and was therefore potentially relevant to the litigation, defendants promptly agreed to produce Ms. Belcher's file. This file was made available to plaintiff on January 23, 1997, nearly a month before the eventual trial date. At that point, plaintiff had long since taken Ms. Belcher's affidavit and had used it in support of his Motion for Summary Judgment. When plaintiff later obtained Ms. Belcher's file, he apparently found it to be of no use and did not cite the file in support of his response to defendants' Motion for Summary Judgment.

2. These managers had been given two of the three positions plaintiff had allegedly sought but not received from AT & T. Plaintiff's counsel had been aware of the potential importance of these employees for some time. Indeed, plaintiff's initial discovery requests had sought information about the managers. Despite the suspicions of plaintiff's counsel, plaintiff failed to notice the managers' depositions at any point during the six-month discovery period.

depositions of these two employees. Defendants moved to prohibit the taking of these depositions, citing passage of the discovery deadline two months earlier.

On January 16, 1997, just over thirty days prior to trial, plaintiff's counsel sent the court a letter stating that they had another trial scheduled for the week of February 18 and asking the court for "guidance" in finding a solution because their small firm (of two attorneys) could not handle two trials in such close proximity. This request was not signed by plaintiff, nor was a copy of the conflicting trial assignment attached. Furthermore, counsel did not represent to the court that the letter was sent within fifteen days of their having become aware of the conflict. The district court did not respond to the letter.

On January 24, twenty-six days before trial, plaintiff filed a motion seeking a continuance. It fell short of complying with the court's order concerning continuances, suffering from the same omissions as the letter, and in addition was not filed within the thirty-day time limit. Although the court did not formally rule on this motion, it did hold a status conference on February 18, the day before trial, and there indicated that plaintiff's counsel would be afforded several days to prepare for trial following the conclusion of the conflicting trial. In order to further ease counsel's burden, the court also waived submission of trial briefs and proposed jury instructions. At this same conference, the district court granted summary judgment in favor of defendants on plaintiff's promissory estoppel and failure to hire claims but denied defendants' motion regarding the wrongful discharge claim.

When plaintiff's counsel's other trial concluded on February 20, the district court informed both parties that trial would commence on Tuesday, February 25. Shortly after receiving the court's communication, plaintiff filed yet another motion to continue and a motion to permit limited discovery (to depose the two AT & T managers). The court denied both of these motions.

The day before trial, plaintiff's attorneys filed a motion to withdraw as counsel. Counsel contended that they could not ethically proceed with the trial as scheduled for lack of adequate preparation. Plaintiff also filed a letter with the court seeking a continuance to secure new counsel. The court denied counsel's motion to withdraw.

Despite having been on notice since August, 1996, that the case was scheduled for trial in late February, 1997, plaintiff's counsel appeared on the day of trial without files or exhibits and indeed did not even sit at counsel table with their client. Plaintiff explained to the court that neither his attorneys nor he himself was prepared to try his case, and he again asked for a continuance so that he might obtain new counsel. Plaintiff and counsel were warned that if someone did not proceed with the trial of plaintiff's case, the court would have no alternative but to enter a dismissal for lack of prosecution. The court then requested an explanation from plaintiff's counsel for their failure to prepare for trial. Counsel proffered three reasons: (1) the court had stubbornly refused to grant a continuance despite its knowledge of counsel's conflict; (2) the actions of defendants and the court's discovery rulings had made discovery next to impossible; and (3) lead counsel was physically and emotionally incapable of handling back-to-back trials. When questioned by the court as to why they had not timely requested a continuance pursuant to the clear written instructions contained in the August trial order, counsel could offer no explanation.

After tracing the history of counsel's dilatory conduct, the court dismissed the case without prejudice for failure to prosecute. The court later issued *nunc pro tunc* orders on all motions upon which it had not previously ruled. This appeal followed.

## II.

Rule 41(b) of the Federal Rules of Civil Procedure gives courts the authori-

ty to dismiss a case for "failure of the plaintiff to prosecute or to comply with these rules or any order of the court." This measure is available to the district court as a tool to effect "management of its docket and avoidance of unnecessary burdens on the tax-supported courts [and] opposing parties." *Matter of Sanction of Baker,* 744 F.2d 1438, 1441 (10th Cir.1984). A district court must be given substantial discretion in serving these tasks; accordingly, we review a district court's Rule 41(b) dismissal for abuse of discretion. *Little v. Yeutter,* 984 F.2d 160, 162 (6th Cir.1993). We will therefore reverse the district court's dismissal only if we have a definite and firm conviction that the trial court committed a clear error of judgment. *Logan v. Dayton Hudson Corp.,* 865 F.2d 789, 790 (6th Cir.1989).

In *Link v. Wabash R.R. Co.,* 370 U.S. 626, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962), the Supreme Court offered guidance concerning the proper scope of Rule 41(b) dismissals. The Court in *Link* upheld a district court's dismissal for failure to prosecute after plaintiff's attorney failed to appear at a scheduled pretrial conference. The plaintiff's attorney had previously waited nineteen months to respond to the defendant's initial interrogatories, had answered those interrogatories only after being threatened with dismissal, and had responded to further interrogatories only after requesting an extension of time. *Id.* at 635 n. 11, 82 S.Ct. 1386. In light of these facts, the Court concluded that "it could reasonably be inferred from [the attorney's] absence, as well as from the drawn-out history of the litigation ...," that petitioner had been deliberately proceeding in a dilatory fashion." *Id.* at 633, 82 S.Ct. 1386. In response to the contention that punishment for the sins of the lawyer should not be visited upon the client, the Court offered the following reasoning:

> There is certainly no merit to the contention that dismissal of petitioner's claim because of his counsel's unexcused

conduct imposes an unjust penalty on the client. Petitioner voluntarily chose this attorney as his representative in the action, and he cannot now avoid the consequences of the acts or omissions of this freely selected agent.

*Id.* at 633–34, 82 S.Ct. 1386.

This court has been "reluctant to uphold the dismissal of a case ... merely to discipline an errant attorney because such a sanction deprives the client of his day in court." *Buck v. U.S. Dep't of Agric., Farmers Home Admin.,* 960 F.2d 603, 608 (6th Cir.1992). Hence, "[although the *Link* principle remains valid, ... we have increasingly emphasized directly sanctioning the delinquent lawyer rather than an innocent client." *Coleman v. American Red Cross,* 23 F.3d 1091, 1095 (6th Cir.1994) (citation omitted). In the context of dismissal pursuant to Rule 41(b) for failure to prosecute, we look to four factors for guidance: (1) whether the party's failure is due to willfulness, bad faith, or fault; (2) whether the adversary was prejudiced by the dismissed party's conduct; (3) whether the dismissed party was warned that failure to cooperate could lead to dismissal; and (4) whether less drastic sanctions were imposed or considered before dismissal was ordered. *Stough v. Mayville Community Sch.,* 138 F.3d 612, 615 (6th Cir.1998). Although typically none of the factors is outcome dispositive, it is said that a case is properly dismissed by the district court where there is a clear record of delay or contumacious conduct. *Carter v. City of Memphis,* 636 F.2d 159, 161 (6th Cir.1980).

In *Bishop v. Cross,* 790 F.2d 38 (6th Cir.1986), this court reversed a district court's Rule 41(b) dismissal where the plaintiffs' attorney, but not the plaintiffs themselves, was present for voir dire. Counsel had not realized that his clients were required to be present, and one plaintiff, a long-haul truck driver, was out on a job and was not expected to be back for several days. In light of the apparently inadvertent nature of plaintiff's coun-

sel's mistake, this court held that the error did not constitute "contumacious conduct" and that the case was improperly dismissed.

Similarly, in *Carter v. City of Memphis, supra,* this court reversed a district court's Rule 41(b) dismissal with prejudice because the actions of plaintiff's counsel did not constitute a clear record of delay or contumacious conduct. Plaintiff's counsel failed to file a proposed pretrial order and did not complete discovery by the scheduled deadline. Notwithstanding this dilatory conduct, we held that the attorney's lapse was not serious enough to justify complete ·sacrifice of the plaintiff's interests. Our opinion noted that "[t]here is no finding or evidence that defendant was prejudiced by plaintiff's dereliction or that the plaintiff could not make the case ready for trial.... [Furthermore] [b]oth attorneys seem equally dilatory." *Carter,* 636 F.2d at 161. We further reasoned that the attorney's actions were not sanctionable by dismissal because they did not amount to failure to prosecute. *Id.*

Where *Bishop* and *Carter* provide examples of the type of conduct not properly sanctioned by dismissal for failure to prosecute, our opinions in *Coston v. Detroit Edison Co.,* 789 F.2d 377 (6th Cir.1986), *Hughley v. Eaton Corp.,* 572 F.2d 556 (6th Cir.1978), and *Harmon v. CSX Transp., Inc.,* 110 F.3d 364 (6th Cir.1997), exemplify the contrary. In *Coston,* this court upheld the district court's Rule 41(b) dismissal in light of plaintiff's counsel's repeated failure to appear at scheduled pretrial conferences and his failure to appear at a summary judgment hearing. *See Coston,* 789 F.2d at 379. Similarly, in *Hughley,* we upheld dismissal because plaintiff's attorney's "failure to appear at the trial date was the result of a conscious choice by plaintiffs to suffer the consequence of dismissal rather than to proceed to trial in the posture of the case as it then stood." *Hughley,* 572 F.2d at 557. Finally, in *Harmon,* we held that the following circumstances warrant-

ed a conclusion that the plaintiff's counsel had engaged in contumacious conduct:

> Harmon failed to respond to the amicable requests of CSXT's counsel, he failed to respond to CSXT's motion to compel, and he failed to comply with the district court's November 2, 1995, order. To make matters worse, Harmon then failed to respond to the motion to dismiss, even after the district court was gracious enough to grant him an extension of time. This record is more than adequate to establish that Harmon's counsel was stubbornly disobedient and willfully contemptuous.

*Harmon,* 110 F.3d at 368.

 The conduct of plaintiff's counsel in the present case is more closely analogous to that of the attorneys in *Coston, Hughley,* and *Harmon* than that of the attorneys in *Bishop* and *Carter.* Here, counsel neglected plaintiff's case, repeatedly ignored court orders without excuse, and ultimately attempted to force the court to grant a continuance by refusing to proceed on the day of trial. Where a plaintiff does not appear at the trial date or, as in this case, is inexcusably unprepared to prosecute the case, Rule 41(b) dismissal is particularly appropriate. Indeed, such behavior constitutes the epitome of a "failure to prosecute." *See, e.g., Owen v. Wangerin,* 985 F.2d 312, 317 (7th Cir.1993) ("The remedy [Rule 41(b) dismissal] is usually applied when the plaintiff is not ready for trial or fails to appear."); *DuBose v. Minnesota,* 893 F.2d 169, 171 (8th Cir.1990) (upholding district court's dismissal in light of plaintiff's attorney's failure to appear for trial despite having been informed of the trial date on three occasions); *Noli v. Commissioner,* 860 F.2d 1521, 1527 (9th Cir.1988) (stating that dismissal for failure to prosecute typically occurs where a party fails to appear at trial); *Maiorani v. Kawasaki Kisen,* 425 F.2d 1162 (2d Cir.1970) (upholding dismissal where plaintiff's counsel failed to appear on day of trial); *see also* 9 Charles Alan Wright & Arthur R. Miller, Federal

Practice and Procedure § 2370, at 367–68 (2d ed.1995) [hereinafter Wright & Miller] ("An action may be dismissed under Rule 41(b) if the plaintiff, without some explanation that is satisfactory to the court, is not ready for trial or if the plaintiff refuses to proceed at the trial.").

Plaintiff's counsel asserts that although a willful failure to prepare for trial might constitute contumacious conduct, counsel's failure to prepare was a result of defendants' refusal to accommodate discovery and the district court's failure to remedy defendants' behavior. Indeed, at oral argument plaintiff's counsel asked this court to remand for further discovery. By the trial date, however, the discovery deadline had long since passed. Thus, unless the district court materially erred in its discovery rulings, counsel's failure to prepare for trial is without excuse. We therefore turn to a brief review of the district court's · challenged discovery rulings.[3]

 Plaintiff's central complaint regarding discovery concerns the availability of the personnel files of several nonparty AT & T employees. Specifically, plaintiff contends that the district court abused its discretion in granting defendants a protective order that limited access to such files to plaintiff's counsel. Such protective orders are commonly granted, however, as a means of protecting the privacy interests of nonparties while yet serving the needs of litigation. *See* 8 Wright & Marcus, § 2041, at 538 ("[A] court may order that confidential information not be disclosed to the client by the attorney."). Courts have also specifically granted such orders to protect nonparties from the harm and embarrassment potentially caused by nonconfidential disclosure of their personnel files. *E.g., Donald v. Rast,* 927 F.2d 379 (8th Cir.1991) (upholding district court's decision in a § 1983 action to limit the disclosure of police officers' personnel files to

plaintiff's attorney in light of the private nature of information contained therein); *Petz v. Ethan Allen, Inc.,* 113 F.R.D. 494, 497 (D.Conn.1985) (ordering defendants to produce job evaluations of nonparties only "for inspection by plaintiff's counsel in the office of counsel to the defendants"). As defendants noted in their Memorandum in Support of the Motion for Protective Order, personnel files might contain highly personal information such as an individual's unlisted address and telephone number, marital status, wage information, medical background, credit history (such as requests for garnishment of wages), and other work-related problems unrelated to plaintiff's claims.

It is clear that defendants had a valid interest in the privacy of nonparty personnel files and that it was within the district court's power to grant the challenged protective order. . It was thus plaintiff's burden to offer proof that the protective order would substantially harm his ability to collect the evidence necessary for prosecution of his case. 8 Wright & Marcus, § 2043, at 559. ("If . . . confidential information is being sought, the burden is on the party seeking discovery to establish that the information is sufficiently relevant and necessary to his case to outweigh the harm disclosure would cause to the person from whom he is seeking the information."). Plaintiff concedes that no such effort was made to demonstrate that the protective order was indeed unworkable. We would, therefore, be unable to conclude that the district court abused its discretion in issuing the protective order.

Plaintiff's counsel also offers assorted complaints that defendants delayed and avoided turning over documents, intimidated witnesses, and stymied depositions, and that the district court, through denials of plaintiff's various motions, refused to curb defendants' deplorable behavior. Counsel

---

**3.** Because our ultimate conclusion in this case is to affirm the district court's dismissal of plaintiff's action, we need not rule on plaintiff's challenges to the district court's interlocutory discovery orders. Nevertheless, for the reason stated above, an analysis of these rulings proves useful in reaching our ultimate conclusion.

asserts that these occurrences inhibited their ability to prosecute plaintiff's case. It seems readily apparent, however, that it was counsel's own neglect that resulted in incomplete discovery. The district court so found, as evidenced by its account on the day of trial. The court's findings are to be regarded as fact unless they are clearly erroneous, and it is apparent that the court did not so err.

If the district court's discovery rulings did not amount to an abuse of discretion, and in view of the admission by plaintiff's counsel that they were yet in need of further discovery before trying plaintiff's case, we are unable to fault the district court's conclusion that counsel's failure to be prepared for trial was without valid excuse and constituted contumacious conduct. The contumacy of counsel's failure is even more evident in light of the district court's attempts to accommodate counsel's schedule. One of counsel's proffered excuses was that their lead attorney had had another trial in close temporal proximity. However, as the court noted, counsel knew of the conflicting trial dates for months and did not seek a continuance until the eve of trial. The court granted a continuance, even though plaintiff's request had not been filed timely, affording counsel between four and five extra days to prepare following the conclusion of the conflicting trial. Furthermore, the district court eased counsel's burden by waiving requirements for trial briefs and proposed jury instructions.

■ For the foregoing reasons, we conclude that the district court's Rule 41(b) dismissal was based upon findings sufficient to have established "a clear record of delay or contumacious conduct." Although review of a Rule 41(b) dismissal typically involves consideration of the remaining three factors cited earlier, their importance fades in the face of the conclusion that dismissal was warranted by contumacious conduct. *See Harmon*, 110 F.3d at 367 (stating that "where a plaintiff has not been given notice that dismissal is contemplated, 'a district court should impose a penalty short of dismissal *unless the derelict party has engaged in "bad faith or contumacious conduct"'*") (quoting *Harris v. Callwood*, 844 F.2d 1254, 1256 (6th Cir.1988)) (emphasis added); *Freeland v. Amigo*, 103 F.3d 1271, 1280 (6th Cir.1997) (holding that *"in the absence of contumacious conduct*, an alternate sanction that would protect the integrity of pretrial procedures should be utilized rather than dismissal") (emphasis added). Consideration of lesser sanctions would seem particularly superfluous under circumstances like those before us, where counsel inexcusably has failed to prepare and then refused to proceed at the time scheduled for trial. Although this court often seeks to sanction counsel rather than client for counsel's delinquent pretrial behavior, in the face of contumacious conduct we must return to the principle enunciated by the Supreme Court in *Link*, 370 U.S. at 633–34, 82 S.Ct. 1386, that a party ultimately assumes responsibility for the actions of its freely selected agent.

### III.

For the foregoing reasons, we hold that the district court did not abuse its discretion in dismissing plaintiff's action for lack of prosecution. In light of our conclusion on this issue, we need not review either the district court's interlocutory discovery rulings or to the court's decisions regarding summary judgment. *E.g., DuBose*, 893 F.2d at 171 ("[T]he claims on which the court had earlier granted partial summary judgment did not merge into the Rule 41(b) order of dismissal, and therefore the summary judgment is not reviewable in this appeal."). The district court's order of dismissal is therefore **affirmed.**

MOORE, Circuit Judge, dissenting.

I do not agree with the majority's apparent holding that not being prepared to proceed on the day of trial per se requires dismissal under our precedents governing Rule 41(b) dismissals. This court has of-

ten held that dismissal for failure to prosecute is a harsh remedy that should be used rarely. Weighing the factors that are considered for determining whether to dismiss a case for failure to prosecute, I would hold that the district court abused its discretion by dismissing this case, and would reverse the district court. I therefore respectfully dissent.

The precedents of this court make clear, as the majority recognizes, that "[n]otwithstanding *Link*, 'this court, like many others, has been extremely reluctant to uphold the dismissal of a case ... merely to discipline an errant attorney because such a sanction deprives the client of his day in court.'" *Harmon v. CSX Transportation, Inc.*, 110 F.3d 364, 367 (6th Cir.1997) (citation omitted) (ellipsis original). The majority fails to point out that the ninety-day period to bring a discrimination action under the ADEA had expired at the time the district court dismissed Knoll's action. *See* 29 U.S.C. § 626(e). Therefore, although the dismissal was without prejudice, Knoll's day in court has been lost absent a successful claim for equitable tolling. *See Wilson v. Grumman Ohio Corp.*, 815 F.2d 26, 27 (6th Cir.1987) (noting that "[i]t is generally accepted that a dismissal without prejudice leaves the situation the same as if the suit had never been brought, and that in the absence of a statute to the contrary a party cannot deduct from the period of the statute of limitations the time during which the action so dismissed was pending"). The dismissal is thus indistinguishable from a dismissal with prejudice and should be treated as such. A dismissal for failure to prosecute "is a harsh sanction which the court should order only in extreme situations showing a clear record of contumacious conduct by the plaintiff." *Stough v. Mayville Community Schs.*, 138 F.3d 612, 614–15 (6th Cir.1998) (quoting *Carver v. Bunch*, 946 F.2d 451, 454 (6th Cir.1991) (internal quotation omitted)).

Knoll's counsel sent a letter to the district court more than thirty days prior to trial seeking "guidance" on the resolution of a potential conflict caused by three potentially concurrent trials. Apparently, the district court had responded to Knoll's conflict concerns in August 1996 at the scheduling of the trial by advising Knoll to wait until closer to trial to see how the three cases progressed. This letter was an attempt to comply with the court's suggestion. Although the letter did not satisfy the district court's trial order that established the procedure for requesting a continuance, the letter did advise the court of a problem and asked for assistance. Apparently the district judge before whom Knoll's attorneys' other trial was scheduled responded to the letter, but the district judge in this case did not. Knoll's counsel then filed a motion seeking a continuance. Although this motion was late and still failed to comply with the district court's trial order, it was only four days delinquent, was consistent with the previous letter, and was not unexpected. The defendants did not object to a continuance. *See* J.A. at 579. The district court, however, did not rule on this motion. The district judge's only response came over three weeks later, during a status conference held the day before the originally scheduled trial date, when he indicated to Knoll's counsel that they would have several days to prepare following the conclusion of the conflicting trial.

As the majority notes, two days later, on February 20, upon the conclusion of the other trial, the district court informed the parties that the trial would begin on February 25. Knoll's counsel immediately filed another motion for a continuance. Again, the defendants did not object. The district court denied this motion. The district court then denied a motion by Knoll's counsel to withdraw. Although counsel's subsequent refusal to try the case on the morning of February 25 was improper, it should not have been a surprise. The flurry of motions Knoll's counsel submitted after the district court informed them on February 20 that the trial would begin in

five days made it clear they were not prepared to try the case.

The majority holds that "[w]here a plaintiff does not appear at the trial date or, as in this case, is inexcusably unprepared to prosecute the case, Rule 41(b) dismissal is particularly appropriate." None of the cases cited by the majority creates a per se rule favoring dismissal with prejudice when a lawyer refuses to proceed on the day of trial. More importantly, each of the cases affirming a Rule 41(b) dismissal contained facts in addition to the failure to proceed that, when aggregated, constituted contumacious conduct. *See, e.g., DuBose v. Minnesota,* 893 F.2d 169 (8th Cir.1990) (where plaintiff not only failed to appear for trial, but had failed to appear at a pretrial conference and failed to comply with other pretrial orders); *Maiorani v. Kawasaki Kisen K.K., Kobe,* 425 F.2d 1162 (2d Cir.1970) (where plaintiff's lawyer failed to appear and files showed that other lawyers who had acted for plaintiff could have conducted the trial). In none of these cases was the district court aware of extenuating circumstances that would weigh against dismissal, such as the conflicting trial facing Knoll's counsel, and good faith efforts to seek a continuance.

I do not dispute that Knoll's counsel acted improperly and that their actions were inexcusable. Indeed, it is difficult to understand why this law firm, even though small, could not prepare for Knoll's trial in the five-day period allotted to them by the district court. However, considering all of the relevant circumstances, including the district court's failure to rule promptly on the motions for continuance or respond to the plaintiff's dilemma, the facts simply do not support the conclusion that the counsel's failure to proceed on February 25 was contumacious.

Under the four factors this court should consider to determine whether a district court's dismissal of a case was an abuse of discretion, *see Stough,* 138 F.3d at 615, the facts of this case weigh in favor of not

dismissing Knoll's case. First, there is no evidence that Knoll's counsel acted in bad faith. Counsel repeatedly sought extensions of time and felt that proceeding with the case without a continuance would have been ethically improper. Second, there is no evidence that AT & T would be prejudiced by a continuance. AT & T did not object to any of Knoll's motions for a continuance. Third, although one might reasonably conclude that a party is presumed to be on notice that failing to proceed on the morning of trial could lead to dismissal, the events surrounding the scheduled commencement of this trial, especially the district judge's vague oral responses to Knoll's unopposed motions for a continuance, indicate that Knoll may well have been surprised by the judge's decision to dismiss the case.

Finally, the district court did not impose less drastic sanctions, and there is no evidence that it considered such an alternative. As the majority noted, this court has "increasingly emphasized directly sanctioning the delinquent lawyer rather than an innocent client." *Coleman v. American Red Cross,* 23 F.3d 1091, 1095 (6th Cir. 1994). Not only was there no showing that a delay in the trial for Knoll's counsel to prepare or for Knoll to find other representation would prejudice AT & T in any way, but also AT & T did not object to Knoll's request for a continuance. Considering all of the relevant facts and extenuating circumstances surrounding the scheduled commencement of trial, I would hold that the district court abused its discretion under this court's precedents by failing to explore alternatives, including monetary sanctions imposed on counsel, for reprimanding Knoll's dilatory counsel.

For the reasons stated above, I respectfully dissent.