MONTGOMERY, Appellant,

v.

EVERETT et al., Appellees.

[Cite as *Montgomery v. Everett* (1991), 74 Ohio App.3d 616.]

Court of Appeals of Ohio,
Allen County.

No. 1-90-72.

Decided June 21, 1991.

*R. Jeffrey Lydy,* for appellant.

*John C. Nemeth,* for appellee Bonnie E. Everett.

*James R. Jeffery,* for appellee Stuart N. Litwin.

HADLEY, Judge.

This is an appeal by plaintiff-appellant, Jennifer S. Montgomery, from a summary judgment granted by the Common Pleas Court of Allen County in favor of defendants-appellees, Bonnie E. Everett and Stuart Litwin.

Jennifer Montgomery ("Montgomery") filed a legal malpractice claim against attorneys Bonnie Everett ("Everett") and Stuart Litwin ("Litwin") following their representation of Montgomery in her divorce proceedings. Montgomery hired Everett and Litwin to represent her subsequent to the filing of a divorce complaint by her ex-husband, Don Montgomery, in 1988. Montgomery paid Litwin, a Chicago attorney not licensed in Ohio, $10,000 and paid Everett, an Ohio attorney with offices in Lima, $6,500 to represent her in this action. Prior to the divorce trial, a hearing was scheduled to determine the validity of an antenuptial agreement executed by Montgomery and her husband prior to their marriage. This was done pursuant to the advice of Litwin and Everett, who allegedly told Montgomery that it could be voided.

However, the validity of this agreement was upheld by the court. Following this hearing, a date for the divorce trial was set.

Consequently, the alimony/property settlement hearing was held on August 18, 1988. As a result of this hearing, Don Montgomery was granted a divorce and an alimony/property settlement was made. The settlement provided that Don Montgomery pay Montgomery $500 per month for eighty-four consecutive months. Additionally, it provided that he make four consecutive annual payments totalling $60,000 to Montgomery. It ordered that Don Montgomery pay off accumulated debt of Montgomery, and then ordered that all properties owned by each party prior to their marriage be retained by each individually. The property attained by the parties during their marriage was to be split. The judgment entry containing the divorce, alimony, and property division settlement also provided that the custody of the parties' only son, Chadd, would be determined at a later date, and, subsequently, temporary custody was awarded to Don Montgomery.

Prior to the finish of the August 18, 1988 hearing, Litwin had to leave the trial to travel to New York, where he had other business. Everett had to finish the trial on her own.

Following the outcome of the divorce, alimony, and property division hearing, Montgomery terminated the attorney-client relationship with Litwin and Everett and hired another attorney to represent her at the custody hearing. The hearing concluded with the court awarding custody of Chadd to Don Montgomery. This decision is being appealed.

On August 25, 1989, Montgomery filed a complaint against Litwin and Everett, claiming legal malpractice and breach of contract. In response to motions for summary judgment filed by both appellees and a memorandum in opposition to these motions filed by appellant, on February 6, 1990, the court issued a judgment entry and memorandum decision granting summary judgment for Litwin and Everett. It is this decision which Montgomery appeals and asserts two assignments of error:

Assignment of Error No. One

"The trial court erred in granting the appellees' motions for summary judgment."

Assignment of Error No. Two

"The trial court erred in dismissing appellant's breach of contract claim."

In Ohio, to establish a cause of action for legal malpractice, it is necessary to show the following:

"(1) an attorney-client relationship giving rise to a duty, (2) a breach of that duty, and (3) damages proximately caused by the breach." *Krahn v. Kinney*

(1989), 43 Ohio St.3d 103, 105, 538 N.E.2d 1058, 1060, citing *McInnis v. Hyatt Legal Clinics* (1984), 10 Ohio St.3d 112, 10 OBR 437, 461 N.E.2d 1295.

The first element of this test is not contested by any of the parties.

In an action for summary judgment, Civ.R. 56(C) provides:

"A summary judgment shall not be rendered unless it appears from such evidence or stipulation and only therefrom, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence or stipulation construed most strongly in his favor."

Accordingly, we will construe the evidence and affidavits presented to the trial court in a light most favorable to appellant Montgomery.

In support of her legal malpractice claims against appellees Litwin and Everett, Montgomery relies primarily on an affidavit from her expert witness, attorney Jude Aubry ("Aubry"). Aubry concluded that Litwin and Everett "departed from accepted standards of care ordinarily exercised by attorneys representing clients in domestic relations matters. * * *" He further stated the particular instances which deviated from the applicable standards of care. The allegations of negligent conduct by Litwin and Everett are numerous, and it must be determined, first, whether the alleged conduct was a deviation from the applicable standard of care, and, second, whether the alleged conduct could have caused any damages to Montgomery. In a legal malpractice claim, it must be demonstrated that absent the alleged negligent conduct, representation, advice, etc., that the plaintiff would have been successful at trial.

Aubry stated that Litwin and Everett were negligent in telling Montgomery that the antenuptial agreement between her and her husband could be defeated, and that this advice was against Ohio law. However, although antenuptial agreements are recognized as valid instruments in Ohio if properly executed, factors did exist which could have been construed by the court to constitute improper execution. One factor in particular was that Montgomery was pregnant and allegedly felt forced into signing the agreement for this and other related reasons. As such, a question of fact existed for the trier of fact to determine and the pursuit of this claim was not unreasonable or against the law. Accordingly, any expenses accrued in furtherance of this claim would not constitute damages in a legal malpractice claim.

Alleged statements made to the effect that Montgomery could not lose custody and that she would get certain property and moneys, although improper if in fact they were made, do not change the outcome of the proceedings, and thus did not contribute to any damages alleged. As such,

they will not be considered in a malpractice action. The same applies to alleged statements that the husband could not testify against the wife in a divorce hearing and that Montgomery should have someone photograph them engaged in lovemaking.

Allegations regarding the decisions as to when to conduct the custody hearing and the award of temporary custody to Don Montgomery deal with actions not entirely in the hands of Litwin or Everett, but rather actions taken by the court. As such, they are not proper malpractice issues. The decision to file an alimony only counterclaim, the interviewing of witnesses, the advice to have the premarital property appraised, and the advice to have "sitters" outside the courtroom are all strategy decisions which cannot be said to have any affect on the outcome. Other claims which may constitute negligence, but which don't show proximate cause as to damages, are the claims that Litwin and Everett underestimated the strength of Don Montgomery's divorce case and that the settlement wasn't fair. It is even admitted by Aubry that it takes "years of practice and experience" handling domestic relations matters before one can determine what is fair. Under this standard, only older and experienced attorneys could properly handle domestic cases—an unreasonable position to take.

Although this court recognizes that Litwin's failure to appear on time to hearings and his leaving early from the divorce trial could very well be considered a breach of contract, the damages resulting from such breach have not been alleged. A review of the transcript and record does not show that had Litwin been at the hearing earlier or had he not left the divorce hearing before it was over that Montgomery's interests would have been represented any more competently or beneficially. No allegations were made or evidence proffered that Everett handled the remainder of the trial negligently or improperly. Additionally, the claim that the alimony settlement is inadequate contravenes the claim that Litwin and Everett should not have contested the antenuptial agreement as the settlement provided Montgomery with more than did the antenuptial agreement.

It is alleged Everett advised Montgomery that if she did not acquiesce to the settlement agreement she would never see her child again. Consequently, it is maintained that this prohibited Montgomery from entering this agreement knowledgeably with free will and accord. Although this may be true as to when she agreed to it in court, she had three days before signing it, during which time she could have obtained other counsel or advice as to its fairness. Regardless of this assertion, there was no evidence presented showing the settlement agreement to be unfair in any respect, especially in light of the antenuptial agreement. Once again, damages are not shown.

■ This brings us to the allegation that Everett advised Montgomery to send copies of the psychological report, conducted for the custody hearing, to potential witnesses. When this was acknowledged in court, the judge declared that anyone who had read the report could not testify as a witness and severely reprimanded Montgomery for sending these reports as they were the court's property. As a result, Montgomery had no one to testify on her behalf to counter the testimony of Don Montgomery and his witnesses. Although this alleged advice could constitute negligence and make damages a question of fact, no affidavits containing the testimony of the potential witnesses were submitted to the trial court in response to the motion for summary judgment, nor was a copy of the custody hearing provided to show the impact such testimony may have had. Civ.R. 56(E) requires such action by the party opposing summary judgment:

"When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him."

Therefore, for the foregoing reasons, appellant's first assignment of error is not well taken.

Just as damages must be shown to support a legal malpractice claim, a claim of breach of contract also requires a showing of damages. For the reasons stated above, no damages have been properly alleged and, thus, appellant's second assignment of error is not well taken.

The judgment granting summary judgment is thus affirmed.

*Judgment affirmed.*

THOMAS F. BRYANT, P.J., and EVANS, J., concur.