Robert ALLEN, Cliff McNeilly, Carolyn Mack, Plaintiffs–Appellees,

v.

Thomas D. MURPH, Doris B. Murph, Defendants–Appellants.

No. 98–3948.

United States Court of Appeals, Sixth Circuit.

Argued: Sept. 21, 1999

Decided and Filed: Oct. 21, 1999

Ingolf R. Dinklage (argued and briefed), Dayton, Ohio, for Plaintiffs–Appellants.

Noel Wyandt Vaughn (argued and briefed), Dayton, Ohio, for Defendants–Appellees.

Before: KRUPANSKY, NELSON, and SILER, Circuit Judges.

DAVID A. NELSON, J., delivered the opinion of the court, in which SILER, J., joined. KRUPANSKY, J. (pp. 724–30), delivered a separate concurring opinion.

## OPINION

DAVID A. NELSON, Circuit Judge.

Thomas and Doris Murph appeal an order in which the district court denied a motion for leave to file an untimely application for attorney fees. The Murphs argue that their untimeliness should be excused because they personally did all that could reasonably have been expected of them in attempting to prosecute the application promptly. Unfortunately for the Murphs, however, their attorneys did not act with similar diligence—and an attorney's inexcusable neglect is normally attributed to his client. See *Pioneer Investment Services Co. v. Brunswick Associates Ltd. Partnership*, 507 U.S. 380, 396–97, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993). Accordingly, and because we find no abuse of discretion on the part of the district court, we shall affirm the challenged order.

I

As defendants in an action alleging housing discrimination, the Murphs won a jury verdict at trial. Judgment on the verdict was entered June 5, 1998.

On June 7, 1998—acting *pro se*, and without favoring their adversaries' lawyer with a copy—the Murphs sent a letter to the trial judge requesting that the case be "formally declared a frivolous action" so that the Murphs could "recover some of [their] damages." By letter received five days later, the judge responded that he could not properly address the merits of the Murphs' request. The judge asked the Murphs to make any requests to the court through their counsel, Attorney Charles Lowe.

Thomas Murph contacted Attorney Lowe's office on June 13, 1998. He was told that Mr. Lowe had gone fishing in Canada and could not be reached until June 22. Mr. Murph then asked to speak with Mr. Lowe's associate, Jeffrey Snead. Unavailable on the 13th, Mr. Snead returned Mr. Murph's call on the next day. Snead told the client that any request for attorney fees would have to be handled by Lowe, and that he (Snead) would not undertake to make an application for fees without Lowe's authorization, guidance and assistance. Mr. Snead did not tell the client that there was a 14–day deadline for filing an attorney fee application. Neither did he volunteer to consult another lawyer in the office, and he did not suggest that the Murphs consult other counsel.

Mr. Murph spoke with Attorney Lowe on June 23, 1998. Lowe declined to prepare a motion for attorney fees, and he advised the Murphs to retain the services of another lawyer.

The Murphs did so, and on July 2, 1998—27 days after the entry of judgment—they filed their motion for leave to apply out-of-rule for attorney fees and non-taxable expenses. The motion papers described the events outlined above and argued that the delay was the result of excusable neglect. Relying on *Pioneer*, the district court denied the motion.

II

Rule 54(d)(2), Fed.R.Civ.P., requires that an application for attorney fees and non-taxable costs be filed within 14 days of the entry of judgment. The Murphs did not meet this requirement. Neither did they request an enlargement of time within the 14–day period. Under

these circumstances, the district court could permit a late filing only if the delay was the result of "excusable neglect." Rule 6(b)(2), Fed.R.Civ.P.

■ A district court's determination with respect to excusable neglect is subject to review under an "abuse of discretion" standard. See *In re Pioneer Investment Services Co.*, 943 F.2d 673, 676 (6th Cir. 1991), *aff'd*, 507 U.S. 380, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993); *Committee for Idaho's High Desert, Inc. v. Yost*, 92 F.3d 814, 824 (9th Cir.1996). We cannot say that the district court abused its discretion here.

■ In seeking assistance first from the court and then from their own counsel, the Murphs acted promptly and diligently in their effort to recover attorney fees and non-taxable costs. However, as the Supreme Court held in *Pioneer*, a determination of "excusable neglect" does not turn solely on whether the *client* has done all that he reasonably could to ensure compliance with a deadline; the performance of the client's *attorney* must also be taken into account. See *Pioneer*, 507 U.S. at 396, 113 S.Ct. 1489. The Supreme Court expressly rejected a suggestion previously made by this court that "it would be inappropriate to penalize [the clients] for the omissions of their attorney;" on the contrary, the Court held, clients must "be held accountable for the acts and omissions of their chosen counsel." *Id.* at 396–97, 113 S.Ct. 1489. In light of *Pioneer*, it was clearly appropriate for the district court to focus its inquiry on the neglect of the Murphs' attorneys.

That neglect was not necessarily excusable. Attorney Lowe represented the Murphs at trial and remained their counsel of record after the entry of judgment. He knew or should have known that the Murphs could seek attorney fees under 42 U.S.C. § 3613(c)(2), and he knew or should have known that they would have only 14 days in which to do so. Yet Mr. Lowe departed for the wilds of Canada without knowing the clients' wishes and without having arranged for another lawyer to cover the case in his absence.

Mr. Lowe's associate also knew or should have known of the deadline for seeking attorney fees. Yet when Mr. Murph asked him—before the filing period had run—to prepare an application, the associate refused to act without the guidance of Mr. Lowe. At the very least, arguably, the associate should have sought an extension of time in order to preserve the clients' rights. Taking all relevant circumstances into account, see *Pioneer*, 507 U.S. at 395, 113 S.Ct. 1489, a fair-minded judge could easily find that the carelessness of these attorneys in allowing the 14–day period to run was inexcusable. The district court did not abuse its discretion in so finding.

**AFFIRMED.**

KRUPANSKY, Circuit Judge, concurring.

I join the opinion and judgment of the panel majority. However, I write separately to clarify joining in this disposition.

The defendants-appellants, Thomas D. Murph and Doris B. Murph, a married couple ("the Murphs"), have contested the lower forum's denial of their application seeking to file an untimely motion for attorney fees and litigation expenses as prevailing parties,[1] pursuant to the discretionary judicial doctrine of "excusable neglect." The Murphs successfully defended a charge of housing discrimination which had been instituted by three individuals under Title VIII of the Civil Rights Act of 1964 (as amended), 42 U.S.C. § 3601 *et seq.* Following a jury trial conducted by a United States Magistrate Judge pursuant to a stipulation under 28 U.S.C. § 636(c) and Fed.R.Civ.P. 73(b) which culminated in a favorable ver-

---

1. The district court may, in its discretion, award a prevailing litigant in a Title VIII case its attorney fees and costs. 42 U.S.C. § 3613(c)(2).

dict for the defendants, journalized by a final judgment on June 5, 1998. Accordingly, to comply with the Federal Rules of Civil Procedure, the Murphs would have needed to perfect their petition for litigation costs and attorney fees on or before June 19, 1998. *See* Fed.R.Civ.P. 54(d)(2)(B) (directing that a post-trial motion for recovery of attorney fees and related non-taxable expenses must be filed and served no later than fourteen days following entry of the judgment).

Because the Murphs had already expended in excess of $40,000 for their legal defense in this action, they elected to seek recovery of their litigation costs and attorney fees without assistance from their trial counsel of record, Charles Lowe. On June 7, 1998, acting *pro se*, they mailed an *ex parte* letter, which both Murphs signed, to the presiding magistrate. That message recited:

> I would like to request that the subject case be formally declared a frivolous action so that I can recover some of my damages. Since I am not sure how this takes place I wish for the courts [sic] help in doing it or explaining to me what needs to be done.
>
> You are in a position since the evidence has been presented to see that I have irrefutable evidence (phone records and receipts) that the plaintiffs are simply not telling the truth. Even if you do not believe their case is merely a scam to defraud me out of money, careful study of the phone records and their complaint, depositions, and testimony proves my version of what happened.
>
> Thank you for your consideration in this matter and be assured we come forward with the greatest respect for the court's position.

By letter dated June 10, 1998 and postmarked June 11, 1998, the magistrate replied to the defendants' inquiry:

> I have received your letter of June 7, 1998, regarding the case which we tried last week.
>
> For a number of reasons, it is not proper for me to consider it or to respond on the merits of the suggestion that you make. First of all, a party represented by counsel in our Court must make all of their requests to the Court through that attorney. Secondly, since the request was not sent to the other side (at least no copy to Ms. Vaughn is shown), it would be a violation of the rules against *ex parte* communications for me to consider it.
>
> I must respectfully, therefore, decline to respond and ask you to make any requests to the Court through Mr. Lowe.

In their ignorance, irrespective of the Murphs' expressed preference to pursue their post-trial application for costs and attorney fees *pro se*, the name of Lowe and his law firm (Crew, Buchanan & Lowe of Dayton, Ohio) was never formally removed as attorneys of record for the Murphs during June 1998.[2] Moreover, no proof existed that either Lowe or the Murphs had formally noticed the other of an intent to terminate their attorney-client relationship. *See Wozniak v. Tonidandel*, 121 Ohio App.3d 221, 699 N.E.2d 555, 558–59 (Ohio App.1997) (explaining that, in Ohio, an attorney-client relationship may, at least in some circumstances, be terminated following the return of a jury verdict, by either the lawyer or the client communicating that intention to the other, even if counsel had not filed with the court a notice of formal withdrawal), *appeal dismissed*, 80 Ohio St.3d 1423, 685 N.E.2d 237 (Table) (Ohio 1997); *Flynt v. Brownfield, Bowen & Bally*, 882 F.2d 1048, 1050–

---

**2.** The docket sheet in this action disclosed that a substitution of attorneys was lodged in the district court on July 2, 1998, by which Lowe was released, and Ingolf Dinklage was substituted, as attorney of record for the Murphs. On that same day, Dinklage submitted the Murphs' motion for leave to file their application for costs and attorney fees out of time, together with the substantive application.

53 (6th Cir.1989) (resolving that, under Ohio law, an attorney-client relationship was discontinued upon the attorney's communication to the client that said relationship had ended).

Furthermore, the magistrate posted a copy of his June 10, 1998 letter to Lowe, which noticed him and his firm that he, the magistrate, had referred the Murphs to Lowe for continuing legal assistance. Notably, the magistrate's June 10 response strongly inferred: (1) that they, the Murphs, could not represent themselves before the court, and (2) that only Lowe could prosecute their motion. Moreover, it did not apprise the Murphs that their motion for attorney fees and trial expenses was required to be initiated within fourteen days from the judgment entry, or even that time was of the essence.

The Murphs received the magistrate's June 10 reply letter on June 12, 1998. Notwithstanding their ignorance of the impending expiration of limitations, they nonetheless immediately endeavored to comply promptly with the magistrate's instructions. Upon telephoning Lowe's office the following day, June 13, 1998, Thomas Murph learned that Lowe had departed the country on June 11, 1998, for a fishing holiday in a remote primitive region of Canada, and would remain *incommunicado* until his scheduled June 22, 1998 return to Dayton. Nevertheless, Murph, in the exercise of commendable diligence, did not simply await his lead counsel's return; rather, he sought to confer immediately with Jeffrey Snead, an associate attorney in Lowe's office who had assisted the Murphs' defense throughout the trial. However, Snead was unavailable on that day.

Snead returned Murph's call the following day, June 14. He advised Murph that he would not prepare a motion for costs and fees without Lowe's authorization and assistance. Moreover, Snead did not seek direction from other more senior colleagues concerning the firm's ongoing post-trial professional obligations to the Murphs, despite the critical legal decision confronting them; nor did Snead assert that Lowe and his firm had officially disclaimed the firm's representation of the Murphs. Snead also neglected to advise the Murphs of the fourteen day limitations term within which to file their motion for trial expenses and attorney fees. He also failed to seek a protective extension of time to file the motion pending Lowe's return to Dayton or until the Murphs could secure alternate representation,[3] nor did he suggest that they should immediately consult alternative counsel in Lowe's absence.

Hence, by virtue of affirmative directions and material omissions made by the presiding magistrate and attorney Snead, the Murphs justifiably believed that only Lowe could prepare their motion. Accordingly, Thomas Murph promptly contacted Lowe's office on June 23, 1998, the first day of Lowe's return to his office. Unbeknownst to the Murphs, the June 19, 1998 filing deadline had already passed. However, Lowe did not advise his clients of the limitations problem which his neglect, and that of his office colleagues, had created for them; nor did he offer to seek judicial relief for the Murphs from the untimely default; nor did he claim that their professional relationship had terminated following the entry of judgment. Rather, he told the Murphs that he was not presently able to draft their motion for costs and fees because he was preoccupied

**3.** The defendants' likelihood of attaining an extension of time to file their motion would have been greatly enhanced had a request to extend time been instituted *prior* to the expiration of the Rule 54(d)(2)(B) fourteen day filing period. *See* Fed.R.Civ.P. 6(b) (positing that a district court in its discretion may grant an enlargement of time in most circumstances for "cause shown" prior to exhaustion of the standard period created by the rules, but that the movant must prove *both* "cause" and "excusable neglect" for failing to act within prescribed limitations if the application to extend time is initiated following the expiration of that period).

by preparing an impending trial. Lowe did not refer the Murphs to any other lawyer in his firm; he instead recommended that they seek new representation.

Within six days of that conference, on June 29, 1998, the defendants retained substitute counsel, Ingolf R. Dinklage, who filed the Murphs' motion for permission to file their petition for trial expenses and attorney fees, together with the substantive motion, three days later, July 2, 1998. *See* Note 2 above. Thus, the Murphs' July 2, 1998 motion for trial expenses and attorney fees was filed thirteen days following the June 19, 1998 expiration of the fourteen day filing period. On July 16, 1998, in the absence of a predicate hearing, the presiding magistrate exercised his discretion by summarily denying their motion to extend time via an order which stated in its substantive entirety:

> Fed.R.Civ.P. 54 requires that a motion for attorney fees be filed not later than fourteen days after judgment is entered. Defendants admit that they did not file within that time, but seek to file late on grounds of excusable neglect. Defendants assert that they personally did not know of the fourteen-day time limit until Defendant Thomas Murph received a response from the Court indicating such a time limit.[4]

> However, throughout the time from judgment until the due date, Defendants were represented by very competent counsel, indeed, counsel who won the case. Surely Mr. Lowe either knew or is chargeable with knowledge of the limit in Rule 54 and his knowledge is imputed to his clients. *Pioneer Inv. Services Co. v. Brunswick Associates*, 507 U.S. 380, 390, 113 S.Ct. 1489, 1496, 123 L.Ed.2d 74 (1993). Thus it is Mr. Lowe's neglect in filing the motion which is material, and no explanation of his

neglect is offered except that he was out of town on vacation. That is simply not a showing of excusable neglect and the Motion to File Out of Time is DENIED.

On August 14, 1998, the Murphs, via Dinklage, noticed a timely appeal.

A trial judge's discretionary decision not to permit a filing out of rule is reviewed for abuse of the exercise of that discretion. *In re Pioneer Inv. Services, Co.*, 943 F.2d 673, 676 (6th Cir.1991), *aff'd*, 507 U.S. 380, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993). Generally, an abuse of discretion occurs "when the reviewing court is firmly convinced that a mistake has been made. A district court abuses its discretion when it relies on clearly erroneous findings of fact, or when it improperly applies the law or uses [an] erroneous legal standard." *Romstadt v. Allstate Ins. Co.*, 59 F.3d 608, 615 (6th Cir.1995) (quotations and citations omitted).

The Supreme Court has characterized Rule 6(b) "excusable neglect" as a "somewhat 'elastic concept' [which] is not limited strictly to omissions caused by circumstances beyond the control of the movant." *Pioneer Inv. Services Co. v. Brunswick Associates*, 507 U.S. 380, 392, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993) (notes omitted). Accordingly, "omissions caused by circumstances beyond the control of the movant" generally should be excused. Additionally, the Court explained:

> Because Congress has provided no other guideposts for determining what sorts of neglect will be considered "excusable," we conclude that the determination is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission. These include, as the Court of Appeals found, the danger of prejudice to the [opponent], the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it

---

4. The meaning of the preceding sentence is perplexing. Nothing in the record, including the text of the magistrate's June 10, 1998 letter quoted above, controverted Thomas Murph's sworn attestation, via affidavit, that the trial court *never* advised him of the limitations period.

was within the reasonable control of the movant, and whether the movant acted in good faith.

*Id.* at 395, 113 S.Ct. 1489. (Citation and note omitted).

If this case only joined the single issue of whether the Murphs had *personally* acted with inexcusable neglect, no question would exist that the record could not support such a conclusion, and thus a hypothetical trial court finding that they had done so would constitute a clear abuse of discretion. However, the uncontroverted record reflects, beyond any rational dispute, that the Murphs had timely done everything which could have been reasonably expected of them under the circumstances, and thus their failure to initiate their petition within rule was caused by circumstances beyond their control. However, the magistrate did not find that the Murphs had themselves acted with inexcusable neglect; rather, he determined that Murphs' *counsel* had been inexcusably negligent, which negligence was the direct cause of the late filing deadline which foreclosed the Murphs from filing a timely motion to recoup their trial costs and attorney fees.

As aptly expressed by the panel majority, the Rule 6(b) "neglect" inquiry additionally compels consideration of the degree of "excusability" of the conduct of the movants' attorneys. The *Pioneer* Court, in reversing the Sixth Circuit's edict that the movant should not be penalized for the incompetence of its counsel, posited that "in determining whether respondents' failure to file their proofs of claim prior to the bar date was excusable, the proper focus is

upon whether the neglect of respondents *and their counsel* was excusable."[5] *Id.* at 397, 113 S.Ct. 1489 (emphasis in original). As properly found by the panel majority, the instant record compels the conclusion that the neglect of attorneys Lowe and Snead was inexcusable.

The seminal issue posed herein is whether the lower court abused its discretion by attributing to the Murphs the inexcusable neglect of their lawyers Lowe, Snead, and their firm, with the attendant consequence that the Murphs were deprived of their opportunity to litigate their claim for costs and attorney fees in excess of $40,000 as prevailing parties in the seminal litigation between the Murphs and their adversaries. In *Harmon v. CSX Transportation, Inc.*, 110 F.3d 364 (6th Cir.), *cert. denied*, 522 U.S. 868, 118 S.Ct. 178, 139 L.Ed.2d 119 (1997), this bench recently affirmed, in an analogous context, the dismissal of a complaint under Fed.R.Civ.P. 41(b) (failure to comply with the Federal Rules of Civil Procedure or any order of the court) and Fed.R.Civ.P. 37(b)(2)(C) (failure to obey a discovery order) because of the plaintiff's attorney's failures to prosecute the action and abide by a discovery order, concluding that the "egregious" and "inexcusable" conduct of the lawyer would be charged against the plaintiff. The *Harmon* court explained:

Notwithstanding *Link*,[6] this court, like many others, has been extremely reluctant to uphold the dismissal of a case merely to discipline an errant attorney because such a sanction deprives the client of his day in court, and it has stated that dismissal is *usually* inappro-

---

5. In so dictating, the Court referenced *United States v. Boyle*, 469 U.S. 241, 105 S.Ct. 687, 83 L.Ed.2d 622 (1985) (sustaining a penalty against a taxpayer by reason of his counsel's dilatory filing); and *Link v. Wabash Railroad Co.*, 370 U.S. 626, 633–34, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962) (propounding that "Petitioner voluntarily chose this attorney as his representative in the action, and he cannot now avoid the consequences of the acts or omissions of this freely selected agent. Any other notion would be wholly inconsistent

with our system of representative litigation, in which each party is deemed bound by the acts of his lawyer-agent and is considered to have notice of all facts, notice of which can be charged upon the attorney.") (citation and quotes omitted). *Pioneer*, 507 U.S. at 396–97, 113 S.Ct. 1489.

6. *Link v. Wabash Railroad Co.*, 370 U.S. 626, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962). *See* Note 5 above.

priate where the neglect is solely the fault of the attorney. More recently, this court noted that although the *Link* principle remains valid, *we have increasingly emphasized directly sanctioning the delinquent lawyer rather than an innocent client.*

*Harmon*, 110 F.3d at 367 (initial emphasis in original and latter emphasis added; citations, quotes, and ellipse omitted). Nonetheless, despite the *Harmon* court's hesitation to deny the plaintiff his day in court solely by reason of his lawyer's misconduct, it found that, on the overall record, no abuse of discretion infected the district court's dismissal of the complaint as a sanction for the attorney's extreme and dilatory contumacious conduct. *Id.* at 367–69. *See also Knoll v. American Telephone & Telegraph Co.*, 176 F.3d 359, 363–66 (6th Cir.1999) (following *Harmon*).

On the record at bench, the lower court's denial of a day in court to the Murphs strictly because of the inaction, incompetence, and unethical unprofessional nonfeasance of their counsel of record, especially in consideration of the Murphs' persistent personal efforts to comply with the court's directives and to present their claim in a prompt and appropriate fashion, as well as the actual notice received within the fourteen day filing period imposed by Federal Rule of Civil Procedure 54(d)(2)(B) by both the district court (via the Murphs' letter of June 7, 1998) and the plaintiffs (via a copy of the magistrate's response letter to the Murphs dated June 10, 1998) that the defendants intended to initiate a motion for costs and fees, at the very least discloses a manifest injustice. However, upon considerable reflection, I am persuaded to concur with the panel majority because I am reluctant to charge the magistrate with an abuse of discretion under circumstances where the petitioners are within Ohio's statute of limitations to timely initiate an action for professional malpractice against Lowe, Snead, and their law firm.[7]

7. Under Ohio law, "[t]o establish a cause of action for legal malpractice based on negligent representation, a plaintiff must show (1) that the attorney owed a duty or obligation to the plaintiff, (2) that there was a breach of that duty or obligation and that the attorney failed to conform to the standard required by law, and (3) that there is a causal connection between the conduct complained of and the resulting damage or loss." *Vahila v. Hall*, 77 Ohio St.3d 421, 674 N.E.2d 1164, 1165–66 (Ohio 1997) (syllabus) (citation omitted). Accordingly, "damages must be shown to support a legal malpractice claim." *Montgomery v. Everett*, 74 Ohio App.3d 616, 600 N.E.2d 256, 260 (Ohio App.1991). In the instant case, the damage or loss suffered by the Murphs, namely the loss of their statutory right to claim recovery of their litigation expenses and attorney fees from the plaintiffs, will not be realized (1) until all appellate challenges to the district court's ruling are finalized and (2) unless this subject litigation is finally resolved adversely to the Murphs by this court's or the Supreme Court's final judgment.

If all required elements of a legal malpractice claim are present, including an actual financial injury, limitations will begin to run from the time that the plaintiff knew or should have known that he possessed that claim. However, despite the Murphs' knowledge, following the magistrate's dismissal of their motion for costs and attorney fees, that their lawyers had acted improperly (which would have triggered the running of limitations *if* all required elements of a legal malpractice claim had been satisfied by that time), they in fact have not yet suffered an actual monetary loss; thus their damages claim will commence to accrue only upon the entry of an adverse final appellate judgment. *See* Ohio Rev.Code Ann. § 2305.11(A)(1) (creating a basic one year limitations term for legal malpractice actions); *Zimmie v. Calfee, Halter and Griswold*, 43 Ohio St.3d 54, 538 N.E.2d 398 (Ohio 1989) ("Under R.C. 2305.11(A), an action for legal malpractice accrues and the statute of limitations begins to run when there is a cognizable event whereby the client discovers or should have discovered that *his injury* was related to his attorney's act or non-act and the client is put on notice of a need to pursue possible remedies against the attorney or when the attorney-client relationship for that particular transaction or undertaking terminates, whichever occurs later.") (syllabus) (emphasis added; citation omitted); *Skidmore & Hall v. Rottman*, 5 Ohio St.3d 210, 450 N.E.2d 684 (Ohio 1983) ("Under R.C. 2305.11(A), a cause of action for legal malpractice accrues and the statute of limitations commences to run when a client discovers or, in the exercise of

Accordingly, I **concur** in the decision and judgment of the panel majority that the district court's ruling should be **affirmed.**

reasonable care and diligence, should have discovered, the *resulting injury*.") (syllabus) (emphasis added; citations omitted).

Because the Murphs have, to this date, been confronted only with a *potential* financial loss which will not materialize into actual injury or loss, depending upon the final disposition of an appellate review of the magistrate's decision by this court or the United States Supreme Court, the Ohio legal malpractice limitations statute, pursuant to the dictates of the Ohio Supreme Court in *Zimmie, supra,* is tolled until an appellate review of the instant appeal has been finally concluded. Accordingly, in the event that the appellate review of the instant controversy reverses the magistrate's decision, the issue here in question becomes moot. However, should the instant appeal affirm the magistrate's ruling, the petitioners will, for the first time, suffer an actual injury or loss, as defined in *Zimmie.* The Ohio Supreme Court in *Zimmie* rationalized that the plaintiff suffered *immediate* actual injury and irreversible financial losses apart from litigation expenses and attorney fees incurred in challenging the state trial court's decision invalidating the prenuptial agreement between the adverse parties to that action because Zimmie was required to pay alimony to, and litigate property distribution issues with, his former spouse immediately upon the issuance of the state trial court's decision. The only cognizable appeal that remained after the trial court's decision, according to the state Supreme Court, was the full extent of the losses that Zimmie would suffer as a result of his lawyers' legal malpractice. *Zimmie,* 538 N.E.2d at 402.

On that point, the Ohio Supreme Court in *Zimmie* rejected the argument that "an *injured person* must be aware of the *full extent of the injury* before there is a cognizable event" which triggers the limitations clock.

*Id.* (emphases added). By contrast, unlike the plaintiff in *Zimmie,* who suffered significant out-of-pocket expenses (beyond the expenditures normally incurred by reason of an appeal) immediately following the issuance of the trial court's order, the Murphs claimed no actual injury, financial outlay, or losses beyond the expenses and attorney fees incurred in the defense of their seminal case. Whereas limitations began running for Zimmie immediately upon the entry of the lower court's adverse order because he suffered actual injury in the form of permanent financial losses as a consequence of the trial court decision, and thus he should have promptly commenced his legal malpractice action but stayed it pending the appeal of the order there in controversy because he did not yet know the full *extent* of his damages, *id.* at 402; the Murphs, however, are *not* required to initiate their legal malpractice lawsuit until after they had ascertained whether they have suffered *any* actual damages. That determination cannot be made prior to the final affirmance or reversal of the trial court's ruling on appeal. Although the magistrate's order may have been "a cognizable event which should have alerted a reasonable person that a questionable legal practice may have occurred," *id.,* the fact remains that the Ohio Supreme Court in *Zimmie,* and in other precedents cited herein, required that the plaintiff suffer *actual damages,* not merely potential or speculative damages, as an essential element of a legal malpractice cause of action, and therefore the Murphs' time limitation within which to file their malpractice claim against their legal counsel does not begin to accrue until the petitioners have suffered actual injury in the form of financial losses which will be cognizable for the first time under *Zimmie* upon a final disposition of the current appellate review.