NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 06a0083n.06
Filed: January 31, 2006

No. 05-3189

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| CRAIG MORGAN, | ) | |
| | ) | ON APPEAL FROM THE |
| Plaintiff-Appellant, | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE SOUTHERN |
| v. | ) | DISTRICT OF OHIO |
| | ) | |
| GANDALF, LTD. and PAUL THOMAS, | ) | O P I N I O N |
| | ) | |
| Defendants-Appellees. | ) | |

BEFORE:   MOORE, ROGERS, and McKEAGUE, Circuit Judges.

**McKEAGUE, Circuit Judge.**  This case presents an employee's claim against his employer for unpaid overtime compensation under the Fair Labor Standards Act.  Defendant employer moved for summary judgment claiming exemption, as a "motor private carrier," from the requirements of the Fair Labor Standards Act.  The district court granted the motion.  On appeal, plaintiff-appellant contends the district court abused its discretion in several procedural rulings, failed to view the evidence in the light most favorable to him, and failed to narrowly construe the asserted exemption. Because we find that the district court abused its discretion in two respects that materially affected the record on which the summary judgment ruling was based, we vacate the lower court's judgment.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Craig Morgan, a resident of Mississippi at all times relevant to this action, was employed by defendant Gandalf, Ltd., as a paintless dent removal (PDR) technician from April 1998

to June 4, 2001. Gandalf is an Ohio limited liability company. Plaintiff performed automobile dent repair services for Gandalf's clients in Mississippi and Louisiana during the subject three-year period. He was not paid an hourly wage, but was compensated strictly on a commission basis. On April 11, 2003, plaintiff filed a complaint against Gandalf in the Southern District of Ohio to recover unpaid overtime compensation owed him under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.* Also named as defendants are Paul Thomas, identified as Gandalf's statutory agent and alleged to be an employer of plaintiff; Curtis Francois, also alleged to be an employer; and Dent Wizard International Corporation, a Delaware corporation doing business in Ohio, alleged to have become successor-in-interest to Gandalf after acquiring its assets on or about June 4, 2001. The district court severed the claims against defendants Francois and Dent Wizard and transferred them to the Eastern District of Missouri in the Fall of 2003.[1]

In the remaining claims against defendants Gandalf and Thomas, plaintiff alleged that between April 1998 and June 4, 2001, he regularly worked more than 40 hours per week; that both Gandalf and Thomas, as his employers, were required to comply with federal overtime pay laws; that defendants failed to pay him overtime compensation when he worked more than 40 hours in a work week; and that this failure was in violation of the FLSA. On March 16, 2004, the district court issued an order of partial dismissal, holding that recovery of overtime compensation accruing prior to April 11, 2000 was barred by the applicable three-year statute of limitation, 29 U.S.C. § 255(a).

---

[1]The claims against Francois and Dent Wizard play no role in this appeal. We note, however, that they were dismissed by order dated February 16, 2005, three weeks after the summary judgment order in this case, on grounds identical to those employed by the district court in this case. Plaintiff-appellant Morgan's appeal of that summary judgment order is currently pending in the Eighth Circuit Court of Appeals.

This ruling has not been challenged. Hence, plaintiff's claim was limited to overtime compensation he might be entitled to for the period April 11, 2000 to June 4, 2001.

After completion of discovery, the parties filed cross-motions for summary judgment on plaintiff's claim in late July and early August 2004. The briefing on the motions alerted the parties to the fact that defendants had failed to file an answer to plaintiff's amended complaint after the district court granted defendants' motion for partial dismissal on March 16, 2004. This failure was undisputedly a matter of mere inadvertence due to oversight by defendants' counsel. Plaintiff opposed defendants' motion for leave to file their answer out of time, contending that defendants had shown neither good cause nor excusable neglect, and that plaintiff would be prejudiced if defendants were allowed to assert affirmative defenses after discovery had already closed. The district court allowed the late filing of the answer by order dated November 17, 2004, finding that plaintiff would not be unreasonably prejudiced.

In the meantime, briefing of the motions for summary judgment had been completed in September and the final pretrial conference, previously scheduled for November 2004, had been continued pending further order of the court. On December 28, 2004, plaintiff moved for an extension of time to complete discovery made necessary by defendants' late filed affirmative defenses. Without addressing this motion, and without conducting a hearing on the motions for summary judgment, the district court issued an opinion and judgment order on January 25, 2005, denying plaintiff's motion for summary judgment and granting defendants'. In its 25-page opinion, the district court explained why it was proper to have allowed the late filing of defendants' answer,

but did not mention plaintiff's motion to extend discovery. By awarding summary judgment to defendants, the court effectively denied plaintiff's discovery motion as moot.

The court then concluded as a matter of law that defendants were exempt from the FLSA requirements pursuant to 29 U.S.C. § 213(b)(1) because plaintiff was an employee whose maximum hours of service were subject to regulation under the Motor Carrier Act ("MCA"), 49 U.S.C. § 31502. In reaching this conclusion, the district court determined that each defendant was a "motor private carrier," *i.e.*, a person transporting property to further a commercial enterprise whose employee was engaged in activities that affected the safety of operation of motor vehicles transporting property in interstate commerce. The district court found that plaintiff, in routinely crossing the Mississippi/Louisiana state line to perform paintless dent repair services on defendants' behalf, transported PDR tools belonging to defendants in furtherance of their commercial enterprise. Further, the court found that plaintiff, engaged in interstate driving and maintenance of defendants' truck, was engaged in vehicle safety-affecting activities. The court rejected plaintiff's contention that, irrespective of the exemption, he was nonetheless entitled to overtime compensation for those weeks when he was engaged in strictly intrastate work activities.

On appeal, plaintiff challenges all three of these substantive determinations. In addition, he contends the district court abused its discretion by allowing the late filed answer, by denying his motion to reopen discovery, and by refusing to consider the contents of his corrected supplemental affidavit in opposition to defendants' motion for summary judgment. Because the procedural rulings materially affected the record on which the summary judgment ruling was based, we address them first.

## III. ANALYSIS

### A. Procedural Rulings

#### 1. *Allowance of Late Filed Answer*

Defendants Gandalf and Thomas were required to file their answer within 10 days after the district court ruled on their motion for partial dismissal. Fed. R. Civ. P. 12(a)(4)(A). Whether to grant defendants an enlargement of time to file their answer was a matter committed to the district court's discretion. Fed. R. Civ. P. 6(b)(2). Under Rule 6(b)(2), it was incumbent on defendants to show that their failure to timely file the answer was the result of excusable neglect. "Neglect exists where the failure to do something occurred because of a simple, faultless omission to act, or because of a party's carelessness." *Turner v. City of Taylor*, 412 F.3d 629, 650 (6th Cir. 2005). Whether neglect was "excusable" is an equitable determination based on consideration of all relevant circumstances. *Id.* These include the danger of prejudice to the nonmoving party, the length of the delay and its impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith. *Id.*

The district court's decision to allow defendants to file their answer almost eight months after it was due is reviewed for abuse of discretion. *Allen v. Murph*, 194 F.2d 722, 724 (6th Cir. 1999). An abuse of discretion occurs when the reviewing court is firmly convinced that a mistake has been made, as when the lower court relies on clearly erroneous findings of fact, improperly applies the law, or uses an erroneous legal standard. *Id.*

In moving for enlargement of time, defendants' counsel John Renick explained that although he had prepared an answer to plaintiff's first amended complaint in February 2004, he did not file it then because the motion to dismiss was still pending. After the district court's ruling on March 16, 2004, he overlooked the fact that the answer had not been filed until receipt of plaintiff's opposition to defendants' motion for summary judgment. He characterized his error as "strictly an oversight" and he disavowed any intent to delay filing the answer until after the close of discovery.

Appellant Morgan did not and does not dispute this explanation, but insists it is insufficient to justify the requested enlargement of time. He contends that mere inadvertence is not "excusable neglect," citing *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. Partnership*, 507 U.S. 380, 392 (1993). Inasmuch as the district court made no finding that defendants' neglect was excusable, Morgan argues the court either improperly applied the law or used an erroneous legal standard, either of which represents an abuse of discretion.

In *Pioneer*, the Supreme Court observed that although mere inadvertence does not usually constitute "excusable neglect" under Rule 6(b), the term is a "somewhat 'elastic concept' and is not limited strictly to omissions caused by circumstances beyond the control of the movant." *Id.* at 392 (footnotes omitted). In applying this elastic concept, the court went on to emphasize that the determination whether neglect is excusable "is at bottom an equitable one, taking account of all relevant circumstances surrounding the moving party's omission." *Id.* at 395. In other words, depending on the equities, mere inadvertence may warrant an enlargement of time under Rule 6(b). *See also Turner*, 412 F.3d at 650.

Here, in considering the relevant factors identified in *Turner*, the district court focused on the lack of prejudice to plaintiff resulting from the late filing of the answer. The district court noted that the defendants in the action transferred to the Eastern District of Missouri – a case involving the same counsel as this case, on both sides – had in February 2004, filed their answer to Morgan's similar FLSA claim and had asserted the same affirmative defenses that were ultimately asserted in this case. The court inferred from this that Morgan had reason to expect that defendants Gandalf and Thomas intended to assert the Motor Carrier Act exemption as an affirmative defense in this case as well. Appellant Morgan has not challenged this inference, nor has he otherwise identified any prejudice flowing from the late filing of the answer *per se*.[2]

As to the reason for defendants' delay in filing the answer, the district court acknowledged their admission that the delay was attributable strictly to counsel's oversight. Yet, although attorney error or inadvertence will not ordinarily support a finding of excusable neglect, the district court failed to recognize that this important factor weighed against defendants' requested relief. In this regard, the district court's analysis is deficient. *See Graphic Communications Int'l Union v. Quebecor Printing Providence, Inc.*, 270 F.3d 1, 5 (1st Cir. 2001) (noting that reason-for-delay factor has the greatest import and is always critical to the inquiry).

Still, we note there is absolutely no evidence of bad faith or improper purpose on the part of defendants Gandalf and Thomas, and they acted to remedy their mistake as soon as they became aware of it. Nonetheless, the late filing of the answer was undeniably ill-timed, coming after

---

[2]The argument that plaintiff was prejudiced because the answer was filed well after the close of discovery and included affirmative defenses with respect to which he had no opportunity to conduct discovery is a separate question, addressed below. This prejudice resulted not from the late filing of the answer, but from the denial of the requested reopening of discovery.

discovery had closed and after summary judgment motions had been filed. Defendants' delay adversely impacted the orderly progress of the case. This factor weighs against allowing the late filing of the answer. Yet, this adverse impact could be fairly ameliorated without necessarily precluding the filing of the answer altogether.[3] Further, if the district court had denied leave to file the tardy answer and default had entered instead, defendants almost certainly would have been entitled to have the default set aside, given their facially meritorious defense and the strong policy favoring adjudication on the merits. *See Shepard Claims Serv., Inc. v. William Darrah & Assoc.*, 796 F.2d 190, 194 (6th Cir. 1986).

Hence, we conclude, upon fair consideration of all the relevant factors, that the question whether defendants' neglect was excusable was a close question. We also conclude that the district court's analysis was incomplete. We are not persuaded, however, that the decision to allow the late filing of the answer was an abuse of discretion.[4]

## 2. *Refusal to Reopen Discovery*

The district court having thus granted defendants relief from the standard pleading requirements, it might have been expected to afford plaintiff corresponding lenity by granting his request to reopen discovery. Even though discovery had closed on July 1, 2004, defendants had

[3]As more fully explained below, in subpart 2, prudence counsels in favor of a less harsh remedy: simply reopening discovery for a short period of time.

[4]Alternatively, Morgan argues the requested enlargement of time could be viewed as a motion to modify the established case management schedule, relief which requires a showing of "good cause," pursuant to Fed. R. Civ. P. 16(b). Yet, even assuming such a recasting of defendants' motion were appropriate, the district court's decision would still be subject to review for abuse of discretion, would entail scrutiny of essentially the same factors considered above, and would unavoidably lead to the same result. *See e.g., Inge v. Rock Financial Corp.*, 281 F.3d 613, 625-26 (6th Cir. 2002).

been allowed to file their answer four months later, formally asserting for the first time certain new affirmative defenses. Good cause for reopening discovery, required under Fed. R. Civ. P. 16(b), was established, plaintiff argued, because the MCA exemption defense, in particular, interjected new fact issues that had not been explored in discovery. Specifically, plaintiff asserted, by way of his attorney John Ferron's affidavit:

> Had Defendants timely asserted this alleged defense, Plaintiff would have conducted specific discovery requiring Defendants to identify and produce relevant evidence demonstrating: (1) the ownership of each and every PDR Tool allegedly used by Plaintiff during the course of his employment; (2) the location of every worksite where Plaintiff performed PDR services in a given week; and (3) the dates on which Plaintiff traveled across state lines while performing his job. Plaintiff would also have sought production of each and every customer invoice showing where Plaintiff worked each day.

The district court did not directly address plaintiff's motion to reopen discovery before rendering it moot by granting defendants' motion for summary judgment. In the body of its summary judgment opinion, the court explained why allowing the late filed answer was proper despite plaintiff's unfair prejudice argument. The court did not explain, however, why it declined to reopen discovery. The *de facto* denial of the motion to reopen discovery is reviewed for abuse of discretion. *Lanier v. Bryant*, 332 F.3d 999, 1006 (6th Cir. 2003).

In opposing plaintiff's motion, defendants argued that further discovery was unnecessary, in light of the issues presented by the summary judgment motions. Apart from the prospect of what they characterized as needless expense, defendants did not identify how they would be prejudiced if discovery were reopened. Defendants proposed that the court defer consideration of the motion to reopen discovery until after addressing the summary judgment motions. In other words,

defendants recommended the court consider reopening discovery only if it determined that the existing record provided an inadequate basis for judgment as a matter of law.

The district court appears to have adopted this recommendation. That is, the court ostensibly concluded that further discovery was unnecessary because the record was adequate to enable a ruling as a matter of law. Yet, this determination could only be reached after the court decided not to consider Morgan's corrected supplemental affidavit. As explained below, this was an abuse of discretion. If the corrected affidavit and particularly Morgan's "clarifying" statement about ownership of the PDR tools had been deemed admissible, the need for further discovery on the ownership question would have been obvious and unavoidable.

Moreover, plaintiff Morgan had otherwise made a facially persuasive case for reopening discovery. First, he had demonstrated good cause for reopening discovery. Although the district court rightly observed that plaintiff had reason to believe defendants intended to assert the MCA defense, plaintiff can hardly be deemed to have been under a legal obligation to anticipate it in discovery.

Second, the need for additional discovery was precipitated by defendants' counsel's admitted neglect, not plaintiff's. After indulging defendants' pleading tardiness, the court, in fairness, ought to have extended corresponding lenity to plaintiff.

Third, plaintiff did not rely merely on nebulous assertions about what discovery might disclose. He identified specific information that could reasonably be expected to be included in his employer's records – information that was integral to issues posed by the MCA defense. In particular, the importance of the ownership of the PDR tools had been made apparent by the

- 10 -

summary judgment briefing. The existing record on this question was anything but conclusive. In fact, defendants themselves had provided no evidence of their ownership of the tools. Plaintiff was entitled to the opportunity to explore the factual basis for defendants' late asserted MCA defense.

Fourth, the court was presented with no compelling or even mildly persuasive reason for not reopening discovery. Unless reopening discovery was bound to be futile, there was no good reason not to allow it. Defendants had even conceded as much. Where defendants had presented no evidence regarding ownership of the tools and plaintiff's proofs were decidedly equivocal, there was no sound basis for the district court's apparent conclusion that further discovery would be futile.

Accordingly, we conclude the district court abused its discretion by denying plaintiff's request to reopen discovery. *See Vance v. United States*, 90 F.3d 1145, 1149-50 (6th Cir. 1996) (summary judgment vacated and case remanded for reopening of discovery where the plaintiff had shown by affidavit that he had not been guilty of dilatory conduct, that specific discovery was relevant and needed, that he was otherwise subject to unfair prejudice, and that defendant would not be prejudiced by reopening of discovery).

### 3. *Refusal to Consider Corrected Affidavit*

In September 2004, plaintiff sought and obtained leave to file a corrected memorandum in opposition to defendants' motion for summary judgment. Attached to this corrected memorandum was plaintiff's corrected supplemental affidavit, dated September 3, 2004. The corrected affidavit purported to clarify two points: (1) plaintiff's residency in Mississippi during the subject period; and (2) plaintiff's ownership of the PDR tools. Only the latter point is significant to this appeal.

Plaintiff had stated in his July 18, 2003 affidavit, attached to his first amended complaint and his motion for summary judgment, that he "repaired the dents and 'dings' in the metal exterior of automobiles, using tools, equipment and supplies *provided to me by Defendants*." Morgan aff. July 18, 2003, ¶ 3 (emphasis added). This statement was "clarified" in plaintiff's corrected affidavit in the following manner:

> 9. When I traveled to my assigned job sites, inside or outside of Mississippi, I transported *my* tools to perform PDR services, including metal rods and reflection boards ("PDR tools"), in the truck that was assigned to me.
>
> 10. Some of *my* PDR tools were *given* to me by Defendants when I first began my employment with them. I was solely responsible for all *my* PDR tools. When they were not in my truck or being used at a job site, I stored *my* PDR tools in my personal tool box, which I brought into my home each night for safe keeping.
>
> 11. While performing PDR services on particularly difficult projects, I damaged and broke some of the PDR tools that Defendants *gave* to me when I started work. Defendants never required that I replace or reimburse them for any of *my* damaged or broken PDR tools. When Defendants sold their franchise to Dent Wizard in June 2001, I kept *my* PDR tools and continued to use them while working for Dent Wizard. I did not give any of them back to Defendants.
>
> 12. Several of the PDR tools that I used on a daily basis to perform PDR services, while I was working for Defendants, were PDR tools that *I had owned* for years and had either purchased or acquired from third parties who were not affiliated with Defendants or Dent Wizard.
>
> 13. None of the tools that I transported to and from work sites in my truck, while I was working for Defendants, was a tool *owned* by either Defendant.

Morgan aff. Sept. 3, 2004 (emphasis added).

These ownership-clarifying statements were intended to counter defendants' newly asserted MCA defense. If plaintiff could establish that he had not transported *defendants'* PDR tools across state lines, then the MCA exemption would undisputedly not apply. The district court refused to consider these statements, however, concluding that they were not clarifying, but *contradictory* of

plaintiff's July 18, 2003 affidavit. The court construed plaintiff's original statement that defendants had provided the PDR tools to him as an admission that defendants owned the tools, an admission by which he remained bound. In support, the district court cited *Peck v. Bridgeport Machines, Inc.*, 237 F.3d 614, 619 (6th Cir. 2001), where the court held that a party may not create a factual issue by filing an affidavit, after a motion for summary judgment has been made, which contradicts his earlier deposition testimony.

The district court's refusal to consider portions of plaintiff's corrected affidavit is an evidentiary ruling subject to review for abuse of discretion. *See Rush v. Illinois Cent. R. Co.*, 399 F.3d 705, 715 (6th Cir. 2005). Morgan contends the district court abused its discretion in this matter because his corrected affidavit is not contradictory, but explanatory. Indeed, the corrected statement, that the PDR tools were *given* to Morgan by defendants, is not necessarily inconsistent with his original statement that the tools were *provided* to him by defendants – especially when the two statements are read, as they must be for purposes of defendants' summary judgment motion, in the light most favorable to Morgan. *See Leary v. Daeschner*, 349 F.3d 888, 896 (6th Cir. 2003) (holding that all evidence must be viewed and all reasonable inferences must be drawn in the light most favorable to the nonmoving party). Until the clarifying statement was filed, Morgan's original statement that the tools were provided to him by defendants begged the question whether ownership passed to Morgan at that time. Yet, the question was irrelevant until the MCA defense was asserted in defendants' motion for summary judgment on July 30, 2004.

Considering this chronology, both the timing and contents of Morgan's proffered clarification, whether ultimately deemed truthful or not, are certainly understandable and facially

legitimate.  Read in the light most favorable to Morgan, the corrected statement genuinely appears to  illuminate or clarify his original statement.  It is not necessarily contradictory or even inconsistent and does not necessarily suggest prevarication.  The district court's contrary conclusion demonstrates that it erroneously viewed both plaintiff's original affidavit and the corrected affidavit in the light most favorable to the defendants, rather than to the nonmovant.  The district court's disallowance of the correction as contradictory thus represents a misapplication of the law governing summary judgment assessment of the record.  This misapplication of the law represents an abuse of discretion.

Further, as explained below, the error was not harmless.  The exclusion of the corrected affidavit was critical to the district court's assessment of the summary judgment issues.

**B.  Summary Judgment Ruling**

In summarizing the substantive law pertaining to plaintiff's FLSA claim and defendants' claimed exemption, the district court correctly identified the material fact issues:  (1) whether plaintiff, in the course of performing services for defendants, engaged in interstate transportation; (2) whether plaintiff, when traveling interstate, transported property owned by defendants; and (3) whether plaintiff engaged in activities affecting the safety of operation of motor vehicles transporting property in interstate commerce. The district court further recognized that exemptions from the FLSA overtime pay requirements are to be narrowly construed against the employer. *Martin v. Indiana Michigan Power Co.*, 381 F.3d 574, 578 (6th Cir. 2004).    Moreover, the employer claiming an exemption bears the burden of proving that it qualifies for the exemption. *Chao v. Double JJ Resort Ranch*, 375 F.3d 393, 396 (6th Cir 2004).  Thus, to qualify for the

exemption, defendants were required to establish all three of the above elements by a preponderance of the evidence.

As we have now held that the district court abused its discretion both by refusing to consider plaintiff's corrected affidavit and by refusing to reopen discovery, the conclusion is inescapable that summary judgment was premature. It is now evident, in particular, that there is a genuine issue of material fact concerning at least the second element above, whether plaintiff, in the course of his employment, transported *defendants'* PDR tools across state lines. Indeed, defendants presented no evidence that the tools Morgan transported were theirs. Their position in this regard was and is based entirely on Morgan's admission in his July 18, 2003 affidavit that the tools used by him in performing services for defendants were provided to him by defendants.

In his corrected affidavit, Morgan purported to explain that the tools provided to him by Gandalf were *given* to him and that all the tools he transported across state lines were *his* own tools either (1) because they had ceased to belong to Gandalf when they were given to him, or (2) because he had obtained them from other sources. As explained above, this clarification is not necessarily contradictory of Morgan's original affidavit. Had the court allowed the clarification, Morgan's corrected affidavit would have been the only evidence presented to the court that spoke directly to ownership of the PDR tools. In plaintiff's opinion, the tools he transported did not belong to defendants. On such a record, defendants would clearly have failed to carry their burden of satisfying the second essential element of their MCA defense. The question of ownership of the

tools would have posed a genuine issue of material fact, foreclosing summary judgment for defendants.[5]

Had the district court granted plaintiff Morgan's request to reopen discovery, the issue might have been further developed. Plaintiff had specifically identified the ownership of the PDR tools as a matter he wished to explore in discovery. The district court's denial of the request resulted in an artificially abbreviated record.

Thus, the district court's award of summary judgment to defendants is flawed. It was premised on the erroneous exclusion of otherwise admissible evidence material to an essential element of defendants' affirmative defense, and on a record otherwise undeveloped because fair opportunity for discovery had been denied.

**III. CONCLUSION**

For the foregoing reasons, the district court's award of summary judgement to defendants on plaintiff's FLSA claim for recovery of unpaid overtime compensation is **VACATED** and the matter is **REMANDED** to the district court for further proceedings not inconsistent with this opinion.

---

[5]We note that the record before us includes a copy of what plaintiff Morgan identified in his July 18, 2003 affidavit as the "Gandalf Employee Handbook." It is actually a Dent Wizard Employee Handbook, ostensibly reflecting the fact that Gandalf was a Dent Wizard franchisee prior to June 4, 2001. In his July 18, 2003 affidavit, Morgan confirmed that his employment with defendants Gandalf and Thomas was subject to the terms and conditions set forth in this Handbook.

Section 5 of the Handbook, "Work Policies and Regulations," contains a provision entitled "Company Tools," which provides that tools and equipment furnished to the employee by the company to complete job assignments remain the property of the company. Despite the apparent relevance of this provision, it appears not have been even mentioned in briefing by either side, to this court or to the district court. We therefore refrain from speculating about its significance and leave the matter for the district court to sort out on remand.